JAMES ERWIN'S LESSEE, PLAINTIFF IN ERROR, *v.* JAMES DUNDAS ET AL.

Although, by the law of Alabama, where an execution has issued during the lifetime of a defendant, but has not been actually levied, an *alias* or *pluries* may go after his death, and the personal estate of the deceased levied upon and sold to satisfy the judgment, yet this is not so with respect to the real estate.

By the common law, the writ of *fieri facias* had relation back to its *teste*, and if the execution was tested during the lifetime of a deceased defendant, it might be taken out and levied upon his goods and chattels after his death.

But if an execution issues and bears *teste* after the death of the defendant, it is irregular and void, and cannot be enforced against either the real or personal property of the defendant. The judgment must first be revived against the heirs or devisees in the one case, or personal representatives in the other.

Such is the settled law where there is but one defendant.

Where there are two defendants, one of whom has died, the judgment cannot be

Erwin's Lessee *v.* Dundas et al.

enforced by execution against the real estate of the survivor alone; and as it has to issue against the real estate of both, the real estate of the deceased is protected by the same law which would govern the case if he had been the sole defendant. The judgment must be revived by *scire facias*.

Before and since the Statute of Westminster 2d (which subjected lands to an *elegit*), a judgment against two defendants survived against the personal estate of the survivor, and execution could be taken out against him, within a year, without a *scire facias*.

But before the real estate of the deceased can be subjected to execution, the judgment, which does not survive as to the real estate, must be revived against the surviving defendant, and against the heirs, devisees, and terre-tenants of the deceased.

The interest of new parties would otherwise be liable to be suddenly divested without notice.

In these views, the highest court of the State of Alabama concurs. (See 6 Alabama Rep. 657.)

THIS case came up, by writ of error, from the Circuit Court of the United States for the Southern District of Alabama.

It was an action of ejectment brought by Erwin, the plaintiff in error, to recover a lot in the city of Mobile, known as Hitchcock's cotton-press, bounded on the north by Main Street, on the east by Water Street, on the south by Massachusetts Street, and on the west by Royal Street, under the following state of facts.

Prior to November, 1836, Henry Hitchcock was seized and possessed of the above lot, and on the 2d of November, 1836, a judgment was recovered against him in the Circuit Court of Alabama for Mobile county, by William McGehee, to the use of Abner McGehee.

By the laws of Alabama, this judgment was a lien upon the defendants' real estate.

On the 21st of December, 1836, Hitchcock sued out a writ of error to the Supreme Court of Alabama, giving the usual bond, with Robert D. James as surety, whereby the judgment was superseded.

On the 23d of June, 1838, the judgment of the Circuit Court was affirmed in the Supreme Court, which affirmance, by the laws of Alabama, operated as a judgment on the bond in error, against both parties obligors.

On the 14th of July, 1838, Hitchcock executed a mortgage of the lot in question to Cowperthwaite, Dunlap, and Cope, to secure the payment of a debt due to them.

On the 18th of August, 1838, a *fi. fa.* issued from the Circuit Court clerk's office, on the affirmed judgment against H. Hitchcock, and Robert D. James, his security; which writ came to the hands of the sheriff of Mobile county, being for the amount of the debt, besides the ten per cent. damages. The sheriff indorsed that he received this execution on the 20th of August, and levied the same on certain lots in Mobile, as the property of Robert D. James, and returned it to the fall term.

On the 10th of October, 1838, Hitchcock, with the consent of

the mortgagees, leased the property to Mansoney and Hurtell for a term of five years.

On the 29th of November, 1838, a *venditioni exponas* issued to the sheriff, commanding him to sell the property, on which he had levied, as shown by his return. To this *venditioni exponas*, he returned that he had advertised the property for sale, and that on the 2d day of March, 1839, all further proceedings had been stopped by an injunction.

On the 2d of March, 1839, Henry Hitchcock filed in chancery a bill against McGehee, praying, for causes shown in the bill, relief against the judgment at law, and that the same should be enjoined. On this bill, an order was made for an injunction in the following words : —

" On the complainant's executing bond, with good and sufficient security, in double the amount of the judgment at law, let an injunction issue agreeably to the prayer of the bill.

"P. T. HARRIS.

"*28th February*, 1839.

" To the Clerk of the Circuit Court of Mobile County, Alabama."

The complainant, Hitchcock, filed a bond by himself and William Crawford, as his security, in the penal sum of $ 8,404, payable to McGehee, dated the 2d of March, 1839, with a condition which, after reciting the rendition of the judgment, the filing the bill, and granting of the injunction, &c., ran in these words : —

" Now, therefore, if the said Henry Hitchcock shall pay and satisfy all damages that the defendant McGehee may sustain by the wrongful exhibition of said bill, and in all things abide by and perform the ultimate decree which may be rendered in the cause, then this obligation to be void and of no effect ; otherwise to be and remain in full force and virtue."

A writ of injunction issued on the 2d of March, 1839, commanding the sheriff to stay proceedings on the execution ; on which he returned, that on the same day he desisted from all farther proceedings, and returned the execution as enjoined.

On the 12th of August, 1839, Hitchcock died.

At the fall term of the Chancery Court, on the 25th of November, 1839, the following order was made in the cause : —

" HITCHCOCK V. McGEHEE.

" This day came the defendant, by his solicitor, and suggests to the court, that the complainant has died since the last term of this court ; and thereupon it is ordered, on motion of defendant's counsel, that the representatives of the complainant revive the proceedings by bill against the defendant, by the 1st day of April next, or

Erwin's Lessee *v.* Dundas et al.

the injunction shall be from thence dissolved, and the defendant have leave to proceed at law.''

At the Spring term, 1840, the 22d of May, 1840, the following order was made : —

'' At the last term of this court, an order was made suggesting the death of the complainant, and that unless the suit be revived on or before the first day of the next term of said court, that the injunction be dissolved, and no party complainant being made, it is ordered that the suit abate, and that the complainant's administrator, and heirs, and security on the injunction bond, pay the costs.''

Hitchcock by his will bequeathed all his real and personal property to his wife, as trustee, with authority to make public or private sales and conveyances for payment of debts, and constituted her executrix.

On the 8th of July, 1840, Mrs. Hitchcock, without having taken out letters testamentary on the will, made an absolute sale and conveyance of the lot in question to Cowperthwaite, &c., subject to the lease above mentioned.

On the 10th of July, 1840, an *alias fi. fa.* issued on the affirmed judgment at law against Henry Hitchcock and Robert D. James, for the amount of the debt, and ten per cent. damages, given on affirmance, which came to the hands of the sheriff of Mobile county ; on which he returned, that he had levied on the land (now the subject of this action of ejectment), as the property of Henry Hitchcock, pointed out to him by Isaac H. Erwin, executor of Henry Hitchcock, deceased ; and that, on the first Monday of November, 1840, he had sold the said land to James Erwin, who was the highest bidder, for four thousand five hundred dollars.

On the 10th of February, 1841, the tenants attorned to Cowperthwaite, &c., as landlords.

On the 3d of March, 1841, Erwin brought this suit against the tenants, who thereupon attorned to him, and agreed to hold under him as landlord.

On the 8th of September, 1841, Cowperthwaite, &c., conveyed all their estate and interest in the premises to Dundas and others, the present defendants in error, who, on the 22d of March, 1842, applied to the court to be admitted into the consent rule, and to defend the action as landlords, on filing certain affidavits. This motion was resisted by the plaintiff Erwin, and also by the tenants ; but in March, 1843, the court admitted them to defend the suit. Whereupon the cause went to trial, and, under the instructions of the court, the jury found a verdict for the defendants.

The plaintiff took the two following bills of exceptions.

First Exception. ''Be it remembered, that at the Spring term, 1843, of this Court, James Dundas, Mordecai D. Lewis, Robert L.

Pittfield, Samuel W. Jones, and Robert Howell, appeared before the court by their counsel, and filed the affidavit of H. Barney, which is made part of this bill of exceptions, and moved the court to be admitted to appear and defend the action against the plaintiff by entering into the consent rule, and pleading. The tenants in possession, Hurtell, Mansoney, and Griffiths, resisted the said motion, and showed cause on oath against the same, which showing, which is on file, is made a part of this bill of exceptions, together with the documents thereto appertaining and referred to, and the said motion was also resisted by the plaintiff. Whereupon, the said motion coming on to be heard, the same was argued, and the hearing of said motion was continued from term to term till at this term, when the said motion was argued, and upon argument had, the said motion of the said applicants, claiming to be landlords, was granted, and the objections of the said plaintiffs, and of the tenants thereto, were overruled. And the said parties, admitted by the court to defend against the will of the said plaintiff and tenants, and the said tenants thereupon, refused to plead. For all which decisions of the court allowing said motion, the plaintiff excepts, and prays this to be sealed as a bill of exceptions, which is done accordingly.

      (Signed,)            J. McKINLEY. [SEAL.]"

Second Exception. "Be it remembered, that on the trial of this cause, on the issue joined between the said plaintiff and the said James Dundas, Mordecai D. Lewis, Robert L. Pittfield, Samuel W. Jones, and Robert Howell, who have appeared as landlords, and entered into the consent rule, and pleaded not guilty; the plaintiff, to maintain the title, on his part, produced and gave in evidence the proceedings had in the Circuit Court of Mobile county, in the State of Alabama, in an action wherein William McGehee, use of, &c., was plaintiff, and Henry Hitchcock was defendant, together with the judgment, executions, sheriff's returns, &c., copies of all which are hereto annexed, marked A. Also, the proceedings of the Supreme Court of Alabama on the affirmance of said judgment, a copy of which is hereto annexed, marked B. Also, the record of the proceedings in a chancery suit, wherein the said judgment was enjoined, the injunction, &c., a copy of which is herewith, marked C. And the sheriff's deed on the sale of the property in controversy by the sheriff of Mobile county, under the said judgment, after the injunction was dissolved, a copy of which is herewith, marked D, showing that the same was purchased by James Erwin.

"It further appeared that Henry Hitchcock died on the 13th of August, 1839, that at and before the time of the rendition of the judgments, he owned in fee simple and was in the possession of the property sued for and sold by the sheriff, and continued so till his

death, except that he executed a mortgage on the 14th of August, 1838, by which he conveyed the said land to Messrs. Dunlap, Cope, and Cowperthwaite, under whom the defendants claim title.

" Upon the evidence offered by the plaintiff, the court instructed the jury that the sale by the sheriff was irregular and void, and that by such purchase at the sheriff's sale, under the said judgments, and the executions ,aforesaid, and the injunction proceedings, the sale and conveyance by the sheriff could convey no title to the plaintiff, and that therefore he was not entitled to recover in this action ; to which the plaintiff excepts, and prays the court to seal this as a bill of exceptions, which is done accordingly.

(Signed,)         J. McKINLEY. [SEAL.]"

Upon these two exceptions the case came up to this Court.

The case was argued by *Mr. George S. Yerger* (in a printed argument) and *Mr. Crittenden*, for the plaintiff in error, and *Mr. Clement Cox*, and *Mr. Sergeant*, for the defendants.

*Mr. Crittenden*, after stating the case for the plaintiff in error, read the following opening argument by *Mr. Yerger*, viz. : —

The record in this case presents for the determination of the court two questions.   First, whether the sheriff's sale to the lessor of the plaintiff, under and by virtue of the execution, issued after the death of Judge Hitchcock, but founded on a judgment obtained against him in his lifetime, is void.   Second, whether the injunction obtained by Judge Hitchcock in his lifetime destroyed the lien of the judgment, or only suspended it.

I think the law upon both questions is in favor of the plaintiff in error.

By the law of Alabama, the judgment, not the execution, creates the lien upon lands.   By the common law, an execution on a judgment may issue at any time within a year, without a *scire facias*. A sale made by or under such execution relates to the judgment, and passes the title from that time, as against the judgment debtor, and all who claim under him.   If he had sold or assigned the property, no *scire facias* was necessary to make his vendees parties before execution issued, because the land was bound by the judgment, and his alienees took it *cum onere*.   Upon his death, his interest, by operation of law, is transmitted to his heirs, or is vested by his will in his devisees; they, like the vendee or alienee, take it subject to the judgment.   Be this, however, as it may, I believe, upon principle, it is clear, that, if an execution issues on a judgment within a year from the rendition of the judgment, though after the death of the defendant, if it is not superseded or avoided by the heir or terre-tenant, or by the guardian of the heir, before a sale is made under it, it passes the title of the ancestor from the date of the judgment.   The execution in such case is not void, but is only

voidable, and if not avoided before the sale, the purchaser takes the title. The question has been repeatedly so decided. Speer *v.* Sample, 4 Watts's Rep. 367 ; Collingsworth *v.* Horn, 4 Stewart & Porter, 237 ; Mills *v.* Williams, 2 Stewart & Porter, 390 ; Preston *v.* Surgoine, Peck's Tenn. Rep. 72 ; Drake *v.* Collins, 5 Howard's Mississippi Reports ; Opinion of Chancellor Kent, in Jackson *v.* DeLancy, 13 Johns. Rep. 537 ; and the principle seems to be recognized in the case of ——— *v.* ———, 13 Peters, 15, 16. The court, in the case of Speer *v.* Sample, 4 Watts's Rep. 367, reviewed all the English and American cases upon the subject. The opinion there delivered is not only a masterly exposition of the law, but is, as I think, unanswerable. All the objections that have been urged against the validity of such a sale are there met and conclusively refuted. The argument of the court is supported by the authorities referred to in the opinion so fully, that the point decided seems to be demonstrated.

The case of Collingsworth *v.* Horn, decided by the Supreme Court of Alabama, 4 Stewart's Rep., although a case of personal property, in principle decides this question. The court there decide, that in regard to personalty, the delivery of the execution creates the lien, and that if an execution is issued in the lifetime of the party, the lien is created, and the property thus bound may be sold under a subsequent execution, without revival against the executors, provided the executions have been regularly and successively issued, so as to continue the lien upon the property. In that case, the execution under which the property was sold issued and was tested after the death of the judgment debtor, but the sale under it related to the lien acquired by the first execution; henc., there was no necessity to issue a *scire facias*. If the judgment creates the lien, and if a sale made under it relates to the judgment, as it unquestionably does, the principle which was asserted in Collingsworth *v.* Horn must necessarily and inevitably apply ; and if, in the one case, there was no necessity for a *scire facias*, or if the execution without it was only voidable, there cannot be, upon principle, any reason why it should be required in the other.

I am aware there are a few cases which hold the contrary doctrine, and decide that the sale is utterly void. Some of these cases will be found, upon examination, to be based upon statutory provisions ; others profess to be founded on the principles of the common law, which principles, however, I will respectfully attempt to show, were misapplied by the judges who decided those cases.

The cases relied on, as establishing the position that the sale in this case is void, are Woodcock *v.* Bennett, 1 Cowen's Rep. 711 ; 9 Wendell, 452 ; 10 Wendell, 211 ; 1 Yerger's Rep. 40 ; 10 Yerger's Rep. 320 ; 16 Mass. Rep. 191 ; 20 Johns. Rep. 106 ; Taylor's North Carolina Reports, 261.

The cases in 9 and 10 Wendell are founded upon the authority

of Woodcock v. Bennett, 1 Cowen. The latter case settled the law in New York, and the subsequent decisions were governed by its authority. If the case in 1 Cowen cannot be sustained, it must fall, and consequently those which are founded on it must fall with it.

The case of Woodcock v. Bennett contains all the supposed principles of the common law relied on to sustain the position that the sale in this case is void; hence, if it cannot be supported, neither of the other cases can be.

In that case, a judgment was rendered against two persons; after the death of one of them, an execution was issued and was levied on the lands of both, and the lands of both were sold. The court decided that the judgment was a charge on the realty and did not survive, as it would have done if the execution had been against the personalty, and they decide, as the execution issued against and was levied on the land of the deceased after his death without revival, the sale was void.

The court, in the outset, assume the position that the execution was void because it issued after his death. They say (see page 733), " The question here will be whether the execution was not necessarily void at the time it issued, inasmuch as it directs a sale of a defendant's *property who was not then in existence*, without first calling on the representatives to whom the property, if he had any, must have passed, and who, being strangers to both judgment and execution, had no day in court, to show that the process was either void or voidable."

The principle assumed here is, that an execution which issues after the death of a party is void, because it directs the property of a dead man to be sold, and because the representatives ought to have a day in court to contest it. I think this is not so, where either the execution or the judgment binds the property in the hands of the heir or executor. *In extenso*, it overturns a series of adjudged cases, from the time of Lord Coke to this time. By the common law, personal property is bound by the test of the execution, and it is settled that an execution which issues after a man's death, but tested before, may be executed and the property sold without making the personal representatives parties. See Fleetwood's case, 8 Coke's Rep. 171; Audley v. Halsey, Cro. Car. 148; 4 Watts, 369, and authorities cited. The ground upon which these cases were decided was, that the goods were bound, and the sheriff had a right to seize them in the hands of a purchaser or administrator; and yet, the reason given by the court, in the case in Cowen, — to wit; " that it issued after his death, without revival against the representatives, and directs the sale of a defendant's property who was not then in existence," — would equally apply, and defeat this execution. Why does it not defeat it? Because the property was bound by it before the death, and the death

therefore cannot be noticed; *a fortiori*, if the real property is bound by the judgment before his death, it may be sold, although the execution issued afterwards.

Again, the court says (same page),—" The general rule is, that, where any *new person* is to be better or worse by the execution, there must be a *scire facias*." Although this is a general rule, it does not apply where the property in the hands of the new person is *bound*, *either* by the judgment or the execution. If a judgment debtor aliens the property bound by the judgment or the execution, must his alienee be made a party by *scire facias?* Surely not. Yet he is a new person, and his interest is affected by the execution. Why is it not necessary? Because the judgment bound the property. So, where an execution is tested before the death, but issued afterwards, the executor is a new party; he is affected by the execution, yet it need not be revived against him, because the property in his hands is bound by a lien which existed prior to the death of his testator. The truth is, new parties are only required to be proceeded against where neither the judgment nor the execution binds the property in their hands, but which property nevertheless must be appropriated to the payment of the judgment or execution. For instance, assets in the hands of an executor must be appropriated to pay the testator's debts. If there is a judgment, but no execution issued and tested in the lifetime of the testator, the goods are not bound; a sale by the executor would pass the title; in such cases a *scire facias* is necessary to have execution of the judgment. Not so where the execution is tested in the lifetime of the testator; there the goods are bound without any direct proceeding against the executor.

But, it is again said, the *scire facias* is necessary, because the new party may show the judgment had been paid or released, or satisfied. The same reason would apply where execution issued after the death, but was tested before. The judgment in the latter case might have been paid, as well as in the former. If the judgment has been paid, the remedy in such case for the executor or heir is to supersede the execution and stop the sale; yet, if this was not done, the sale itself would be absolutely void, even as to a *bonâ fide* purchaser, because, the judgment being paid, the sheriff had no authority to sell. 2 Hill's Rep. 566; Wood *v.* Colvin, and cases cited in page 567.

In cases where a *scire facias* is necessary, if it does not issue, the execution is only erroneous. It is as necessary to issue a *sci. fa.* if there has been no execution issued within a year, as where the party has died. Yet if it does issue without a *sci. fa.*, it is not void, but voidable.

The court, 1 Cowen, 739, says, the reason of this is, that in the former case there is a party alive who can avoid it, — in the latter case there is not; and say the court in the former case, the law

permits the plaintiff to issue it, subject to be defeated on the application of the defendant, but in the latter case the act of issuing the execution is not warranted by law.

The court here take for granted the very thing in dispute. It is as much against law to issue an execution without a *sci. fa.*, after the year and day, as it is to issue it after the death of the party. In both cases, the execution may be avoided; in the first case by the party himself, — in the latter, if levied on the goods, by the executor, or on the land, by the heir or his guardian, or by the terre-tenant. The levy in both cases notifies them of the proceeding. The court is mistaken, I apprehend, in supposing there is a party to avoid in the first case and not in the last. For surely the executor, heir, and terre-tenant are privies in law and may avoid it. The distinction taken by the court is therefore unsound.

The court cite 2 Saunders, 6, N. 1, and advert to many cases to show that, where heirs or terre-tenants are proceeded against, *scire facias* is necessary. But these cases do not decide that the execution is *void*, if issued without it, for the question arose upon writs of error, or motions to quash. The books also say, a *sci. fa.* is necessary where no execution has issued within a year from the rendition of the judgment, yet if it does issue, they also say it is only erroneous, not void. In all or nearly all the cases cited by the court, where it is said a *sci. fa.* may or must issue, the question was not whether it was void, if the execution did issue without it, but merely whether the process should be avoided or set aside.

The court cite the bill of rights of New York, " that no person shall be put out of his freehold or lose his goods, unless he be brought to answer," &c. &c. And they think this provision requires in all instances a *sci. fa.*

This might be true, if the goods or lands belonged absolutely to the assignee or representative of the judgment debtor, but as they take the land or goods subject to the judgment lien, which lien takes effect not from the sale, but from the rendition of the judgment, the goods never were in contemplation of law, after the sale, their goods or lands. The same argument would defeat a sale of land or goods actually levied on before the parties' death, but not sold ; so it would compel a *sci. fa.* to issue if the judgment debtor sold the land after the rendition of the judgment, but before a sale under it, for the land is as much the property of the alienee, in such case, as it is of the heir, after the ancestor's death.

The court then proceed to show that the New York act, which gives a remedy to the purchaser of lands who is evicted on account of irregularity, &c., in the judgment, sustains the view previously taken by the court. This it is not necessary to examine.

This case, from 1 Cowen, was cited upon the argument of the

case in 4 Watts's Rep. 367, and I think the opinion of the court in that case is a complete answer to it.

The case relied upon, from 20 Johns. Rep. 106, presented merely the question whether it was erroneous to proceed by *sci. fa.* against some of the terre-tenants, without joining all. The court decided it was necessary to proceed against all. It was the case of a writ of error prosecuted by some of the defendants, and the observations of the court only apply to the case before them. The case simply decides it to be erroneous. The question, whether, if a sale had been made without *scire facias*, it would be void, was not raised by the record.

The cases in 9 and 10 Wendell follow the authority in 1 Cowen, and such no doubt is now the law of New York, but these decisions, as I have shown, not being founded on principle, and being partly founded on a statute of New York, are no controlling authority for other courts.

The cases cited from Tennessee and North Carolina have no application. The lien of the judgment obtained against the ancestor, in both those States, is qualified by the act of 1784, or by the construction put on it by the courts. It is held, under this act, that the lien of the judgment, or rather the judgment itself, cannot be enforced after the death of the ancestor, until the personal estate is proceeded against and the plea of *fully administered* found in favor of the personal representative. Boyd *v.* Armstrong's Heirs, 1 Yerger, 40; Gilmer *v.* Tisdale, 1 Yerger, 285; Peck *v.* Wheaton, M. & Yerger's Rep. 353.

The case of Boyd *v.* Armstrong's Heirs admits, if the sale passed the right before the death of the ancestor, it would be valid. Judge Haywood dissented in that case, notwithstanding the act of 1784. And afterwards, in the case of Preston *v.* Surgoine, in Peck's Reports, the court decided (Judge White dissenting), that if an execution issued after the death of the ancestor, but within a year from the rendition of the judgment, the lands were bound and might be sold, without a *sci. fa.* against the heirs.

In the case of Overton *v.* Perkins, 10 Yerger's Rep. 328, the execution did not issue for several years after the judgment. The land, in the mean time, had been sold by the judgment debtor, in his lifetime, to Perkins, and by the Tennessee act of 1799, the lien of the judgment, as to purchasers, only exists for a year.

The case from Taylor's North Carolina Reports seems not to have been examined, and in North Carolina it has been decided (see 2 Murphy, 45), that if a *fi. fa.* is issued, instead of an *elegit*, the lands are only bound as goods and chattels are bound by the common law.

The case cited from 16 Mass. was decided upon the principle, that, in Massachusetts, an extent or sale did not relate by fiction to the time of the judgment.

Erwin's Lessee v. Dundas et al.

In the case cited by me from 13 Peters, the party died after a decree ordering the land to be sold, but before sale. The sale was made without revival, and it was held to be valid. This case, and those previously cited by me, completely overturn the reasoning of the court in 16 Mass. Rep. 191, and the other cases relied on.

I conclude, therefore, as the judgment was rendered against Judge Hitchcock by the Supreme Court of Alabama, in June, 1838, and as the mortgage to Cowperthwaite and others was made in July, 1838, the sale under the judgment vested the title in the lessor of the plaintiff, and he is entitled to recover.

The next question is, whether the injunction obtained by Judge Hitchcock, which was afterwards dissolved, destroyed the lien.

It is a general principle, that a lien once created continues until actual payment, unless forfeited by some act of the party in whose favor it is created. Rankin v. Scott, 12 Wheaton's Rep. 177 ; Darrington v. Borland, 3 Porter's Rep. 35 ; Overton v. Perkins, Martin & Yerger's Rep. 367.

An act which merely suspends proceedings on a judgment does not destroy the lien of the judgment. Tayloe v. Thomson, 5 Peters's Rep. 358.

It seems to be a settled rule, that the act of the opposite party, or the act of the law, shall never affect the right of a third person. 5 Co. Rep. 87 ; 1 Co. Rep. 102, a, 105, b, 106, b ; Lusk v. Ramsey, 3 Mumford's Rep. 417 ; 18 Johns. Rep. 311, 363.

The rights of the plaintiff at law, after a dissolution of the injunction, stand upon the same ground they did when it issued. Martin and Yerger's Rep. 373, and cases cited by Judge Catron, in delivering the opinion of the court in that case. See also the argument of Judge Haywood, 1 Haywood's Rep. 60, 61, 62.

The precise point was ably investigated and decided by Judge Catron in Overton v. Perkins, Martin & Yerger's Rep. 370.

The case cited by the defendants in error, from 1 Miner's Alabama Reports, was not a decision of the court; it was a mere dictum. Besides, it was a case of personal property, which was not bound by the judgment, but was only bound from delivery of the execution to the sheriff. It may be that, on account of the perishable nature of personal property, the lien may be destroyed by the injunction. In the case of land, it is the judgment which binds and creates the lien in Alabama, and in such case the injunction suspends, but cannot destroy, the lien. See 3 Porter's Rep. 35.

The case of Winston v. Rives, 4 Stewart & Porter, 269, is also cited to show that the lien is destroyed. This case does not decide the point. The judge, arguendo, takes it for granted that the law is so. It was also a case where personal property was levied on. The case in fact only decides that a second writ of error bond discharged the sureties in the first, because they, as sureties, were

prevented by the *supersedeas* from asserting a right the law gave them, to wit, to have the judgment against their principal executed. The sureties might for this have been discharged, and the lien of the judgment remain unimpaired as to the principal.

The law is settled, that a judgment lien, which is a mere security of record for the debt, is not merged or extinguished by another security which is not of a higher character. A judgment founded on a judgment does not extinguish the first judgment. If a judgment were obtained on the injunction bond, it would not extinguish the original judgment. Andrews *v.* Smith, 9 Wendell, 53; Jackson *v.* Shaffer, 11 Johns. Rep. 513; Tayloe *v.* Thomson, 5 Peters, 358.

But what is the ground of the dictum in the case in 3 Porter, 145, and 4 Stewart & Porter, 260? It is that the injunction bond is given to pay and satisfy the debt or judgment according to law. If there is no bond, or it is a forgery, or if it is conditioned for the payment of costs and damages only, and not for the payment of the judgment, or if the injunction issues without a bond, then and in either of these cases the lien of the judgment is not discharged, even if the law should be as stated by the judge in these cases, because he has not got the substitute for the lien, to wit, a bond and security to pay his judgment. The condition of the injunction bond executed in this case by Judge Hitchcock and his surety is only to pay the *damages*, &c., not the judgment; consequently, according to these cases, the lien is not discharged.

The levy of the execution on the land of James, the surety of Judge Hitchcock in the writ of error, does not affect the lien of the judgment, because the levy, being on real estate, was no satisfaction of the judgment. Hogshead *v.* Carruth, 5 Yerger's Rep. 227; Shepperd *v.* Rowe, 14 Wendell, 260. And because, if the principal had property, it was the duty of the sheriff to abandon that levy, and levy on the property of the principal. Aikin's Digest, 164. The surety, in fact, could have stopped the sale, or, if the land was sold to satisfy the judgment, he still could, according to the Alabama law, have issued an execution on the judgment for his own benefit, and sold the property of the principal. 3 Stewart & Porter, 345; 4 ibid. 277. Moreover, the injunction prevented it from being sold, and after the injunction was dissolved, it was the duty of the sheriff to levy on the property of the principal.

For the above reasons, and upon the above authorities, it is confidently believed the judgment of the court above ought to be reversed.

*Mr. Crittenden*, after reading the above argument, proceeded with his own.

The question is, as to the validity of the sheriff's sale. If it was erroneous, it can only be set aside upon a direct motion to that

effect, and not tried in a collateral action. Was it void, convey ng no title whatever? The authorities show, that if execution issues after a year and a day, it is only voidable. What essential difference is there between that case and where it issues after death? In neither are the parties precluded from showing payment. It is said that injustice may be done; but how can a loss by forced sales occur any more when execution issues after the death of a defendant than when it issues after a year and a day? Sufficient notice is given in both cases by the sheriff's going upon the property, taking possession, and advertising. Is hardship a sufficient reason 'for setting aside a legal process? Must the law guard against possibilities, and is not an injury done to creditors by annulling the sale? Are sales, fairly made, to be declared null and void, upon the bare suspicion that a wrong may be done? When a lien is created by the judgment, it is as if public proclamation were made that the property is bound by that judgment. If so, to pursue it after the death of the defendant is only to adopt the analogous practic, of a court of chancery, and consider it a proceeding *in rem.* This court has gone further than any other in giving effect to sales made under judicial authority. When a judge has declared what shall be done, ought not courts to enforce it? Bidders are encouraged to purchase at sales thus made, and the principle promotes the public benefit. A purchaser ought not to be bound to know whether a party is dead or not. It is an extrinsic fact. The sheriff may not know it himself; the party may have gone abroad. If the question were a new one, no good reason can be given why the law should be so. The heirs of the party have not come forward to set the execution aside, but the question has arisen in a collateral action. Injustice must certainly be done by deciding in one way, and in the other there exists a possibility of its happening in some manner which is untold and uncomplained-of. The case of Speer *v.* Sample, 4 Watts, 367, is directly in point, and so is that of Collingsworth *v.* Horn, 4 Stewart & Porter, 237.

But it is said by the other side, that the lien of the judgment was destroyed by the injunction bond. On the dissolution of an injunction, the party stands exactly where he did before it was issued. Supposing the bond to be perfectly good, yet is there great delay in suing upon it, and in this case it is only to cover damages.

An injunction does not annul a judgment, but only restrains a party from proceeding. It is only a *supersedeas,* a temporary suspension of the rights of the party. 1 Martin & Yerger, 367.

*Mr. Clement Cox,* for defendants in error.

The points raised in the first bill of exceptions, relating to the admission of the present parties to the suit, have not been argued by the learned counsel, and are therefore pr sumed to be abandoned. (*Mr. Crittenden* remarked, that he did not formally abandon

the points, but did not argue them.)  *Mr. Cox* said, in such case, he would not argue them either.

The remaining point in the case was this.  That the sheriff's sale, under which the plaintiff claimed, and the deed from the sheriff, and the writs and proceedings upon which they were founded, were irregular and void, and conveyed no title, and the plaintiff was not entitled to recover in the action.

The sheriff's sale was void for two reasons.

1st.  The injunction bond destroyed the lien of the judgment.

2d.  The execution was wrongfully issued without a previous *scire facias.*

1.  The record shows how the injunction was granted and bond given.  We have a right to presume that they followed the statute. There were three judgments against Hitchcock, one in the court below, one in the Supreme Court, and one in chancery ; and two judgments against his sureties ; namely, one against James and one against Crawford.  All five of these were alive at once, according to the doctrine contended for by the other side.  But it is against the policy of the law, to countenance multiplied securities, for a single debt.  The law does not favor dormant liens, which tie up property.  These are the principles of the common law and of the statutes of Alabama.  The legislature and courts of that State have adopted them.  A lien of a judgment upon lands arises from the Statute of Westminster 2d, giving an *elegit.*

1 Brock, 170, establishes that where there is a senior judgment with a stay and a junior judgment without a stay, the latter is preferred.  See also 2 Brock, 252 ; 4 Peters, 124 ; 3 Alab. Rep. 560 ; 4 Alab. Rep. 735–739.

This policy runs through many of the laws of Alabama.  Thus, where a senior creditor has the debtor in execution under a *ca. sa.*, the debtor may dispose of his property to a junior creditor, and this without the *ca. sa.* superseding the lien.  Aikin's Digest, 159, 160.

Also, if there be doubt in the mind of the sheriff, he may require a bond of indemnity.  If a junior creditor gives such a bond, and the senior creditor refuses, the sheriff may legally sell and satisfy the junior creditor.  Aikin's Digest, 166, 167.

So, where a senior creditor lays by for a long time, the junior creditor may enforce his lien.  4 Alab. Rep. 543, 750 ; 1 Haywood, 72.

So, a junior creditor is preferred if he sells before a senior, although the latter takes out a series of executions.  Aikin's Dig. 156, and a corresponding principle at 162.  A lien of an execution was held to be destroyed by an injunction.  Miner's Alab. Rep. 373.

Where there is a series of appeals, each one acts as a merger of the preceding ones.  4 Stewart & Porter, 269.

Erwin's Lessee v. Dundas et al.

The sureties in an appeal bond are discharged by new sureties being given in a higher court. 4 Stewart & Porter, 275 ; 3 Porter, 138, 153 ; Wiswell v. Monroe, 4 Alab. Rep. 9 ; 4 Alab. Rep. 543, 735.

2. The execution was wrongfully issued.

Erroneous executions are voidable where there is a party in court to avoid them ; but where there is no such party, they are void. There are numerous authorities for this. Fitzherbert, N. B. 267, 597, where an *elegit* was said to be void, when issued after the death of the party, without a *sci. fa.* ; Orlando Bridgman's Rep. 464 ; 7 Bac. Abr. 138, tit. *Scire Facias*, C, 4 ; 1 Salkeld, 319 ; 2 Ld. Raym. 768 ; 2 Saunders, 6, note 1 ; 6 T. R. 368 ; Bingham on Ex. 121; Chitty's General Practice, 522. American decisions : 1 Cowen, 711, 739 ; 10 Wend. 206 ; 20 Johns. 156 ; 16 Mass. Rep. 191, 193 ; 10 Yerger, 328 ; 1 Yerger, 40.

Personal estate is held to be the fund first applicable to debts, and real estate is only to be reached in the mode therein pointed out. Aikin's Dig. 151, 154, 156 ; Clay's Digest, 191.

The case in 4 Stewart & Porter, 237, has been cited on the other side, in which it is said that such an execution is only voidable. But it is an *obiter dictum*, and relies on 13 Johnson, which has been overruled by the cases in Cowen and Wendell ; and even the case in 4 Stewart & Porter says, at page 249, that it would be different if third parties were involved. 4 Comyn's Dig. 250, tit. *Execution*, F ; 3 Alab. Rep. 254.

*Mr. Sergeant*, on the same side.

This is a question to be settled by authority. What is the law of Alabama on the subject? Many cases have been cited, but the latest of all has not, namely, 6 Alab. Rep. 657. The case in 4 Watts was decided upon principles peculiar to Pennsylvania law. (*Mr. S.* here commented upon this case.) But what is the law of Alabama? The case in 4 Alab. Rep. 735, was decided in January, 1843, and the present case was tried in the Circuit Court in the following March. The same counsel who were employed in the case in 4 Alab. Rep. were engaged in this one, and even the title was the same in both, for it was Erwin's title, though in another form. The subject of controversy was this very title, and all the cases were quoted.

It is difficult, if not impossible, to see how the court could have decided as they did without deciding the precise point that the lien of the judgment was destroyed. It is a strictly local law. The judge who tried this case in the court below had before him, in manuscript, the decision of the highest court in the State, and it was, in effect, an appeal from that court to the Circuit Court of the United States. The defect in the argument of Mr. Yerger is, that it does not inquire what the law of Alabama actually is, but what

it ought to be according to the principles of the common law. We need not follow the distinction between a levy upon real and personal property, although it is obvious. When a levy is made on personal property, the sheriff becomes the owner, and it is hard to say when he may not sell it. But in land, he acquires no ownership.

Was the execution wrongfully issued? The general rule of law is, that there must be two parties. In 1 Howard, 282, 286, this court said that an execution was void which had been issued under a decree. That case came up from Alabama, and the decision was, therefore, upon the law of Alabama. Why should a sheriff sell the property of a dead man without giving notice to those concerned? What a chance for roguery and fraud? It is said on the other side that the execution is only voidable. But who is to avoid it?

*Mr Crittenden*, for plaintiff in error, in reply.

We insist that the execution is not void, but only voidable. It is admitted that the judgment was a lien. Some cases say that where an execution is begun, and then the party dies, the execution goes on; that the property is in the custody of the law. That is reasonable doctrine, and avoids litigation. A *sci. fa.* is often more troublesome than the original suit. It is possible that some new defence may be drawn forth. But is the possibility of this to overbalance certain wrong on the other side? No good reason can be given for the distinction between real and personal property; and yet it is admitted that a sale of personal property would be good. Such distinctions, without reason, are discreditable to law and to science. The law of Alabama makes real estate responsible for debts equally with chattels. The case of Collingsworth *v.* Horn covers all the ground of this case, and has not been overturned. In 4 Alab. Rep. 752, the court say they " are willing to leave it open to be settled when it shall arise," and yet in 6 Alab., the court say that the preceding case settles the point. They seem to have overlooked the fact that in 4 Alab. the court were willing to leave it open. Is this court precluded, in such a state of things, from examining a question upon which there has been such vibration. In all the cases, the point is made to rest upon the common law, and not upon the statutes of Alabama.

Mr. Justice NELSON delivered the opinion of the court.

The first execution issued upon the judgment, in this case, was issued on the 18th of August, 1838, during the lifetime of both the defendants, and was therefore regular and valid; but, according to the return of the sheriff, a levy was made only upon the property of James, the surety, and was abandoned when the proceedings at law were enjoined by the bill in chancery. We may, therefore,

lay this execution out of the case. For, although, according to the law of Alabama, when an execution has been issued during the lifetime of a defendant, but not executed, an *alias* or *pluries* may go after his death, and the personal estate of the deceased be levied on and sold to satisfy the judgment, for the reason that the lien, thus regularly acquired under the first, is continued by the succeeding writs, down to the time of the sale ; yet it appears to be well settled there, that the practice has no application to the enforcement of executions against the real estate of the deceased. Lucas *v.* Doe, ex dem. Price, 4 Alab. R. 679, N. S. ; Masony et al. *v.* The U. S. Bank, ib. 735 ; and Abercrombie *v.* Hall, 6 ib. 657.

The validity of the plaintiff's title, therefore, must depend altogether upon the execution issued on the 10th of July, 1840, nearly one year after the death of Hitchcock, under and by virtue of which the premises in question were sold and conveyed to him.

At common law, the writ of *fieri facias* had relation to its *teste*, though in fact issued subsequently, and bound the goods of the defendant from that date. The act of 29 Car. II. (reënacted in most of the States) took away this relation as respected the rights of *bonâ fide* purchasers, and confined its binding effect upon the goods as to them to the time of the delivery of the writ to the sheriff ; but as between the parties, it remained as it stood at common law.

One consequence of this relation has been, that if the execution can be regularly tested in the lifetime of a deceased defendant, it may be taken out and executed against his goods and chattels after his death, the same as if that event had not intervened.

The theory or fiction upon which this result is arrived at is, that the execution is taken in judgment of law to have been issued at the time it bears date, however the fact may have been, and *that* being prior to the death of the defendant, and the goods being bound from the *teste*, or presumed issuing, execution upon them is deemed to have commenced in the lifetime of the party, and being an entire thing, may be completed notwithstanding his death.

It is regarded in the same light as if delivered into the hands of the sheriff and the goods bound in the lifetime of the defendant, for the reason the officer being entitled to seize them at any time after the *teste*, the death of the party could not alter the right ; and therefore, though the execution came to the sheriff after, still if tested before, his death, the goods may be seized, in whose hands soever they may be found.

In illustration of the extent to which this doctrine of relation is carried, we may add, it has been frequently held, that, if a judgment is entered in vacation against a defendant who died the preceding term, an execution tested on a day in the said term prior to the defendant's death may be sued out without a *scire facias* ; for, as the judgment signed in vacation relates

to and is considered as a judgment of the first day of the preceding term, and as the execution relates to the judgment, it may, in point of form, be considered as having commenced before the death of the defendant, on account of the date or *teste*, and, of course, upon the ground above stated, being an entire thing, be completed afterwards.

There are numerous authorities establishing this view of the case in respect to the enforcement of judgments and executions against the goods or other personal estate of the defendant. Gilb. on Ex. 14, 15 ; Bing. on Ex. 135, 136, 190 ; 2 Tidd's Pr. 1000, 9th Lond. ed. ; 7 T. R. 24 ; 6 ibid. 368.

This doctrine of relation is resorted to with a view of meeting and avoiding the objection, which might otherwise be alleged, that the rights of new parties, to wit, the personal representatives of the deceased, would be affected by the issuing and enforcement of the writ upon the goods after the death of the defendant, who should be called in and made parties to the record for the purpose of enabling them to interpose a defence, if any, to the judgment. For, upon the construction given, the writ is regarded as having been issued in the lifetime of the defendant himself, and, inasmuch as he had not taken any steps to arrest it before his death, no good reason could be given for the interposition of his representatives. They, upon the view taken, were not new parties, nor parties at all to the proceedings, as the last step in the appropriation of the goods to the satisfaction of the judgment had been taken in the lifetime of their intestate.

The same doctrine, it seems, has been held to be equally applicable to executions against the lands and tenements of a deceased defendant, and therefore an *elegit* bearing *teste* before may be issued after his death, for the reasons given in the case of executions against the goods and chattels. 2 Tidd's Pr. 1034, 9th Lond. ed.

It is otherwise as respects the writ of extent issued against the king's debtor ; for, as that cannot be antedated, but must bear *teste* on the day it issues, it can only be issued against the lands and goods in the lifetime of the defendant. Another writ issues in case of his death to the sheriff to inquire into the special circumstances before execution is enforced. 2 Tidd's Pr. 1049, 1053, 1057.

This series of cases, coming down from the earliest history of the law on the subject, and the reasons assigned in support of them, necessarily lead to the result, — and which has also been confirmed by express decision in all courts where the authority of the common law prevails, — that an execution issued and bearing *teste* after the death of the defendant is irregular and void, and cannot be enforced either against the real or personal property of the defendant, until the judgment is revived against the heirs or devisees in the one case, or personal representatives in the other.

Fitz. N. B. 266 ; Harwood v. Phillips, O. Bridgman's R. 473 ; Dyer's R. 766 ; Pl. 31 ; 2 Wms. Saund. 6, n. 1 ; 2 Ld. Raym. 849 ; Archb. Pr. 282 ; 2 ib. 88 ; Woodcock v. Bennett, 1 Cow. 711 ; 10 Wend. 212 ; Hildreth v. Thompson, 16 Mass. 191.

Mr. Williams, in his note to the case of Jefferson v. Morton, 2 Wms. Saund. 6, n. 1, says, that, if the defendant dies within the year, the plaintiff cannot have an *elegit* under the Statute of Westm. 2 against his lands in the hands of his heirs or terre-tenants, or generally any other execution, without a *scire facias* against his heirs and terre-tenants, or personal representatives, although he may in some cases have a *fieri facias* against his goods in the hands of the executors, referring to the exception to the general rule, when issued in the lifetime of the defendant. So, if the conusee dies within the year, his executor cannot have an *elegit* at common law without a *scire facias*, nor, if the conusor dies within that time, can the conusee have an *elegit* against his heir or terre-tenant without such writ. The rule being, he says, that where a new person who was not a party to the judgment or recognizance derives a benefit or becomes chargeable to the execution, there must be a *scire facias* to make him a party to the judgment or recognizance. Penoyer v. Brace, 1 Ld. Raym. 245 ; S. C., 1 Salk. 319, 320 ; S. C., Carth. 404.

Such is, we apprehend, the settled law of the case, where the judgment is against one defendant, and the execution issued and tested after his death.

In the case before us, the judgment upon which the execution was issued and the lands sold had been rendered against two defendants, one of whom was living at the time, but the lands sold belonged to the estate of the deceased. And it is material to inquire, whether, in this aspect of the case, a different rule can be applied to the sale.

At common law, a judgment or recognizance in the nature of a judgment did not bind the lands of the defendant, nor did the execution disturb the possession, as it went only against the goods and chattels. The Statute of Westm. 2, ch. 18 (13 Ed. I.), first subjected the lands of the debtor to execution on a judgment recovered against him, and gave the plaintiff the writ of *elegit* by virtue of which the sheriff seized and delivered a moiety of the lands until the debt was levied out of the rents and profits. Under this statute, a moiety of the land is deemed bound from the rendition of the judgment. 2 Bac. Abr., tit. *Execution*, 685; 3 Bl. Com. 418 : 3 Co. 12 ; The People v. Haskins, 7 Wend. 466.

Before the statute, a judgment was considered a charge only upon the personal estate of the defendant ; since, a charge upon both the real and personal estate.

Before and since the statute, in case of a judgment against two defendants, and the death of one, the charge of the judgment survived against the personal estate of the survivor ; and execution

could be taken out against him within the year without a *scire fa-cias*, and the debt levied. 2 Tidd, 1120 ; 1 Salk. 320 ; Bing. on Ex. 136 ; Norton *v.* Lady Harvey, 2 Wms. Saund. 50, 51, n. 4, and 72, n. 3 ; 16 Mass. 193, n. 2 ; 1 Cow. 738.

The writ, however, must be in form against both, to correspond with the record, but it could be executed against the goods of the survivor only ; or, on making a suggestion of the death upon the record, the writ could be against the survivor alone. (Ibid.)

And if the judgment against both defendants is founded upon contract, the surviving defendant is entitled to contribution out of the estate of the deceased (Bing. on Ex. 137, and cases cited); if upon tort, it would be otherwise.

. But since the statute, if the plaintiff seeks to enforce the judgment against the real estate of the defendants in the case put, he must revive it by *scire facias* against the surviving defendant, and the heirs, devisees, and terre-tenants of the deceased, before execution can regularly issue. For, as to the real estate of the defendants, the charge of the judgment does not survive ; and the execution must go against the lands of both ; and as it cannot be regularly issued against the deceased codefendant, nor be allowed to charge the estate in the hands of his heirs, devisees, or terre-tenants, until they have notice, and an opportunity to set up a defence, if any, to the judgment, a *scire facias* is indispensable to the regularity of the execution. 2 Wms. Saund. 51, n. 4 ; Bing. on Ex. 137, and cases cited ; 4 Mod. 316 ; 2 Co. 14, *a* ; 1 Ld. Raym. 244 ; S. C., 1 Salk. 320 ; S. C., Carth. 404 ; 16 Mass. 193, n. ; 1 Cow. 711.

It will be seen, therefore, upon these authorities, that the same objections exist, both in principle and in reason, as it respects the enforcement of a judgment against two by a sale of the real estate on execution after the death of one, which have been shown to exist against the enforcement of a judgment against a single defendant after his death. For as the charge of the judgment against the lands does not survive, but continues upon the lands of both after the death of one, the same as before, and cannot be enforced against the real estate of the survivor alone, as in the case of the personalty, and the execution must therefore be issued against both if issued at all, it is obvious the lands of the deceased, in that event, are as liable to be sold by the sheriff as the lands of the survivor. The rights of the heirs and devisees, and the reasons for protecting them by the *scire facias*, are the same in the one case as in the other ; and when the law disables the plaintiff from suing out execution against the real estate on a judgment against one defendant after his death, it must equally disable him from suing it out on a judgment against two, after the death of one. Otherwise, in both cases, the interest of new parties, upon whom the estate has fallen, or to whom it may have passed, is liable to be suddenly and without notice divested by the silent, and till then dormant, power of the

law ; parties, too, who from their age and situation in life will not unfrequently be the least qualified to understand and protect these interests, being the children of the deceased defendant.

This writ of *scire facias* is also made necessary in order to secure the judgment in cases where the plaintiff has neglected to take out execution within the year. And yet it has always been held, that, if taken out after the year, the sale under it is valid, and the title of the purchaser protected. The execution is not void, but voidable, and may be regularly enforced unless set aside on motion.

In analogy to this course of decision, it has been argued that an execution issued after the death of the party should not be considered void, and the sale under it a nullity, and that the only remedy should be on a motion to set it aside.

Before the Statute Westm. 2, already referred to (ch. 45), if the plaintiff had neglected to take out execution within the year, his only remedy was an action of debt on the judgment. The law presumed it had been satisfied, and therefore drove the plaintiff to a new original. 2 Tidd, 1102 ; 1 Bing. on Ex. 123, n. This statute extended to him the writ of *scire facias*, by means of which the judgment could be enforced after the year by execution, and as the writ could thus be issued after the year by a *scire facias*, the judges held, if issued without, and the defendant did not interpose and set it aside, it was an implied admission that the judgment was unsatisfied and existed in full force. The issuing, under the circumstances, was regarded simply as an irregularity which it was competent for the party defendant to waive.

It is apparent that the analogy between this class of cases and the one under consideration is exceedingly remote and feeble, and that they stand upon different and distinct grounds, and the conclusions arrived at upon substantially different and distinct considerations.

Another ground has been urged in support of the sale in this case which deserves notice.

It has been argued that the grantees of lands sold on a judgment against the grantor, or previous owner, through whom the title was derived, where the sale confessedly would be valid, stand upon the same footing as the heirs or devisees in the case of a sale after the death of the defendant.

But the distinction between the two cases is manifest.

In the first place, the grantee, in making the purchase, is presumed to have made the proper inquiry into the nature and validity of his title, and therefore to have known of the existence of the incumbrance, and to have taken the necessary precautionary measures against it.

The sale on the execution cannot take him by surprise, with ordinary attention to his rights.

And in the second place, the defendant in the execution, not the

grantee, is the party most deeply interested in the proceeding ; for if his grantee, or any succeeding grantee under the title, should be dispossessed by reason of a sale on a prior incumbrance by judgment, he, the defendant in the execution, would be answerable over upon his covenants of title.

The grantee, therefore, is neither exposed to a sale under the judgment by surprise, nor is he the party usually interested in the sale. Upon the whole, without pursuing the examination farther, we are satisfied, that, according to the settled principles of the common law, and which are founded upon the most cogent and satisfactory grounds, the execution having issued and bearing *teste* in this case after the death of one of the defendants, the judgment was irregular and void ; and that the sale and conveyance of the real estate of the deceased under it to the plaintiff was a nullity.

We may further add, that since this suit was commenced, and while it was pending in the Circuit Court of the United States, the highest court in the State of Alabama have had the same question before them, and have arrived at a similar result (6 Alab. Rep. 657). Judgment of the Circuit Court affirmed.