84  535
e101  229

JOSEPH A. COFFIN *vs.* WILLIAM FREEMAN.

Washington. Opinion June 24, 1892.

*Real Action. Levy. Attachment. Death. R. S., c. 76, § § 23, 38; c. 81, § 59; c. 94, § 10.*

In a real action, both parties claimed title under the same grantor; the plaintiff by conveyances from judgment creditors whose attachments were made prior to the record of the defendant's deed. The defendant sought to overcome the plaintiff's superior title by showing that the proceedings, by the

judgment creditors, were invalid by reason of irregularities; but he failed so to do. *Held;* that the plaintiff is entitled to judgment,

Where land seized on execution is described as " subject to a mortgage given by A to B & Co.," stating accurately the record thereof in the proper registry, and it appeared that there were several mortgagees, but who were not co-partners, *Held;* that the identity of the mortgage is sufficiently stated.

It is a sufficient specification of the nature and amount of the plaintiff's claim, and a compliance with the statute creating a lien on real estate, in an action on account annexed, to charge the defendant " to one year's damage for flowage of intervale on my home lot, &c., from September 1, 1873, to September 1, 1874, agreed price."

A judgment rendered thereon cannot be collaterally impeached.

A levy is not avoided by an error in the computation of interest less than one per cent of the amount for which it should be made,— the error arising from a clerical mistake in the execution itself being issued for one dollar too much for the debt and costs when added together.

Where an execution issues after judgment and the land is seized and advertised for sale by the sheriff during the life of the judgment debtor, and the sale is made and the proceedings completed after his death, *Held;* that the proceedings are not arrested by the debtor's death.

ON REPORT.

Real action, in which the case is stated in the opinion.

*George Walker and Charles Peabody,* for plaintiff.

*C. B. Rounds and A. MacNichol,* for defendant.

WHITEHOUSE, J.   This is a writ of entry in which the plaintiff demands possession of township No. Eighteen, Middle Division, Bingham Purchase, in the county of Washington.   The defendant disclaims all interest in the premises except a lot situated in the south west corner of the township, comprising fifty acres of upland and all that part of Schoodiac pond lying in township Eighteen.   Both parties claim to own this fifty acre lot in fee simple, and both derive title from Otis S. Tibbetts. The plaintiff seeks to establish his claim by conveyances from two different judgment creditors of Tibbetts : first, by a conveyance from Gowen Wilson who purchased, at an execution sale July 5th, 1879, the right in equity which Tibbetts had September 1st, 1877, the date of the attachment on mesne process, .to redeem the entire township from a mortgage to George Harris and others, dated December 1st, 1869 ; and second, by a conveyance from Horatio N. Bridgham who caused a levy to be

made on the entire township by virtue of an execution issued on a judgment in his favor against Tibbetts, pursuant to an attachment made in the original suit September 22, 1874.

The defendant claims to hold under a quit claim deed of this fifty acre lot alone, executed by Tibbetts April 24, 1877, in consideration of fifty dollars; but this deed was not recorded until February 7, 1878. It thus appears that the attachment in favor of Gowen Wilson, as well as that in favor of Bridgham, was prior to the record of the defendant's quit claim deed; and the plaintiff accordingly claims that he shows a title superior to the defendant's, either by the sale of the Tibbetts' equity on the Wilson execution or by the levy on the Bridgham execution. The defendant attacks the legality of the proceedings in both cases and denies that the plaintiff acquired any title from either source.

The deeds from Gowen Wilson, William H. Knowles and L. A. Knowles were sufficient to vest in the plaintiff whatever title Wilson acquired by the sheriff's deed under the sale on his execution, and if all the proceedings which culminated in that sale as well as the officer's return and the deed to the purchaser were in accordance with the statute, regular and valid, the plaintiff's title to the fifty acre lot would have priority over that of the defendant.

But the defendant interposes and elaborates with painstaking industry thirty objections to the validity of the sale on the Wilson execution. He claims in the first place and offers parol evidence tending to show that, as a part of the consideration of a deed received by them January 12, 1880, from the administrator on the estate of Otis S. Tibbetts, deceased, Knowles and Coffin agreed to pay and discharge all the incumbrances on the real estate purchased by them, including the Harris mortgage, the Wilson sale and the Bridgham levy. But the nature and effect of that proceeding are readily comprehended without the aid of parol evidence. Knowles and Coffin purchased the interest of the Tibbetts estate in that property. This was all the administrator could sell. The purchasers received their deed subject to existing liens with the obvious understanding that they must

discharge the incumbrances or lose the benefit of their purchase ; but, as they did not elect to avail themselves of this right under the administrator's deed and do not now seek to make title by virtue of that deed, the transaction is no longer material to this inquiry respecting the validity of the sale on the Wilson execution.

In the officer's return of the seizure and sale of Tibbett's right to redeem from the Harris mortgage, it is represented that the real estate is " subject to a mortgage recorded in Washington County Registry of Deeds, book 124, page 84, given by Otis S. Tibbetts to George Harris and company." There were in fact eighteen individual mortgagees and no partnership existing among them ; and it is, therefore, suggested that this designation is erroneous and misleading. But, the express reference to the record of the mortgage, by book and page, considered in connection with the description of the property and the names of the mortgagor and the first named mortgagee, leaves no room for doubt respecting the identity of the mortgage.

It is next claimed that the writ in the action *Wilson* v. *Tibbetts*, did not contain such a specification of the nature and amount of the plaintiff's claim as would authorize an attachment of real estate. But an inspection of the account annexed to the writ shows that this suggestion is not warranted by the record. The account gave the defendant definite notice of the nature and amount of the plaintiff's demand and was a sufficient compliance with the statute to create a lien on real estate. *Jordan* v. *Keen*, 54 Maine, 417. ·

The " agreed price " per year for the right to flow the plaintiff's land was legally recoverable in that action of assumpsit. Such a right is not even an interest in land but is in the nature of a license to do certain acts upon the land of another, as, to cut trees upon or pass over the land of another. *Clement* v. *Durgin*, 5 Maine, 9. But, for aught that appears, the compensation may have been fixed by written agreement or lease. R. S., c. 94, § 10.

It is, therefore, sufficient that under the declaration and specifications in that writ, evidence was admissible upon which the

judgment in question may have been legally rendered. That judgment has not been impeached for fraud, want of jurisdiction or error in law, but has stood unreversed and unquestioned, for more than twelve years, conclusive evidence of the existence and amount of the defendant's indebtedness to the plaintiff in that suit. None of the objections here raised respecting the origin and character of that indebtedness are now open to this defendant. A judgment cannot be thus collaterally impeached. *Smith* v. *Keen*, 26 Maine, 423 ; *Granger* v. *Clark*, 22 Maine, 128 ; *Banister* v. *Higginson*, 15 Maine, 73 ; *Sidensparker* v. *Sidensparker*, 52 Maine, 481 ; *Crafts* v. *Ford*, 21 Maine, 417 ; *Jordan* v. *Keen, supra*.

It is provided by R. S., c. 76, § 23, that, "when by an error of the officer the amount for which the levy was made exceeds the amount of debt or damage, costs, interest and cost of levy, by a sum not greater that one per cent thereof, it is valid if otherwise legally made." In this case the alleged error of the officer of one dollar and seventy cents in the computation of interest is much less than one per cent of the amount for which the levy should have been made. Before the passage of this statute, it had been repeatedly held in this State that a levy is not to be avoided because an officer has taxed and caused to be satisfied in the extent, fees not authorized by law. *Sturdivant* v. *Frothingham*, 10 Maine, 100 ; *Keen* v. *Briggs*, 46 Maine, 467. The officer in such case is liable to the debtor but the creditor is not to suffer by any extortion of the officer. The levies in which illegal fees may have been charged remain unaffected by the statute and are not to be defeated for that cause. *Wilson* v. *Gannon*, 54 Maine, 385.

But, as the result of an obvious clerical error in adding the debt and cost in the execution, the officer was commanded to collect an excess of one dollar. If this does not come within the provision of the statute as an error of the officer, it must fall under the principle of the decisions above cited respecting the taxation of excessive fees by the officer. It does not avoid the levy. The creditor was not responsible for the error and there was no intentional wrong on the part of any one. An exactly

similar question arose in *Avery* v. *Bowman*, 40 N. H. 453, and the court said : "All the reasoning which the courts have suggested for not avoiding a levy when the excess is attributable entirely to the mistake or misconduct of the levying officer, applies with full force to a levy made excessive entirely through the fault of the clerk who issued the execution." This case is cited with approval in *Prescott* v. *Prescott*, 62 Maine, 430, and *Corthell* v. *Egery*, 74 Maine, 44. This objection to the validity of the sale is therefore untenable.

The officer's return on the execution is in substantial compliance with the requirements of the statutes. His statements of fact respecting the posting of notices in adjoining towns are confirmed by the judicial notice which the court takes of the geographical position of counties and towns. *Harvey* v. *Wayne*, 72 Maine, 430.

But, it appears from the evidence that Otis S. Tibbetts died June 28, 1878, and that the sale on the execution did not take place until July 5, 1879. It is, therefore, argued that a sale thus made after the decease of a judgment debtor without further notice is unauthorized and void. But it is provided by R. S., c. 76, § 38, that, "the seizure on execution is considered made on the day when notice of the sale is given." In this case the execution was issued May 23, 1879, and the notices of the time and place of sale were given May 31, 1879. The seizure was, therefore, made and the writ partially executed during the life-time of the judgment debtor. There is no process known to our law by which a party can have any judgment for completing, against the debtor's representatives, the service of an execution thus regularly commenced against the debtor himself; and, if after the sale has been advertised, the execution is abated or all further proceedings arrested by the decease of the judgment debtor, it is obvious that the attachment on mesne process in such case would be dissolved. There is no provision of the statute by which, in such a contingency, a judgment creditor can make his attachment available unless the sale can be legally made as advertised. At common law an *elegit* bearing teste in the defendant's life-time may after his death be

extended on his real estate, and the same is true of any other writ so tested, which may be employed to make real estate answerable for the defendant's debt. *Lessee* v. *Dundas*, 4 How. 58; Freeman on Ex'ons, § 37, and cases cited. The precise question here raised was directly involved and expressly determined in *Wood* v. *Morehouse*, 45 N. Y. 373. The court said: "The execution upon the judgment had issued and the premises had been advertised for sale by the sheriff during the life of the judgment debtor, but the sale was made and the proceedings completed after his death. The execution of the process was not arrested by the death of the judgment debtor. The sheriff could lawfully complete the execution of the process thus commenced." The defendant's contention upon this point cannot be sustained.

All other objections to the regularity of the proceedings involved in the sale upon the Wilson execution appear to be without substantial merit. All interest which Tibbetts had in the premises September 1st, 1877, was by the sheriff's deed conveyed to Gowen Wilson and by subsequent conveyances vested in the plaintiff. The Harris mortgage was discharged February 13, 1880. The title acquired by the Bridgham levy was vested in the plaintiff by appropriate conveyances, and it is not in controversy that all other incumbrances antedating the Wilson attachment were paid and discharged. It is, therefore, immaterial that the Harris mortgage in question was discharged instead of being assigned to the plaintiff. This conclusion renders it unnecessary to consider the numerous other questions discussed by the counsel.          *Judgment for the plaintiff.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY AND FOSTER, JJ., concurred.