JAMES NORVAL, *Plaintiff in Error*,

*vs.*

JAMES P. RICE & LUTIA A. RICE, *Defendants in Error.*

ERROR TO THE ROCK COUNTY COURT.

The statute creating the County Court, in so far as it provides for the trial of issues of fact by a jury of six men instead of twelve, is repugnant to the Constitution of this State and void.

The right of trial by jury, secured by the Constitution, contemplates a jury of twelve good and lawful men, as the same was understood by the common law.

This right may be waived by the party, directly or indirectly. But if a party demands his trial by jury, and that is denied, he does not waive that right by afterwards submitting to a trial by the court.

Under the act of February 1, 1850, " to provide for the protection of married women in the enjoyment of their own property," it is competent for the wife to sue alone, or to join her husband, in actions concerning her separate estate.

This was an action of assumpsit, commenced in the County Court of Rock county by the defendants in error against the plaintiff in error, to recover a balance due from Norval to Lutia Ann Rice, one of the defendants in error, for goods sold to him by her, before her marriage with James P. Rice, the other defendant. The declaration contained the usual counts for goods sold and delivered, money had and received, and for an account stated. Each count alleged that the defendant became indebted to the defendant, Lutia Ann, on the 1st day of October, while she was unmarried, and that the promises of payment were made to her while she was sole. The declaration did not state when the defendants in error were married. The general issue was pleaded, with notice of set-off.

The plaintiff Norval moved for a change of venue, on the ground of alleged prejudice of the judge; which motion was denied, and exceptions taken. He then paid into court the usual jury fee of three dollars, and demanded that the issue should be tried by a jury of *twelve men*. The county judge decided that he was not entitled to that number, and the cause was tried by the court on the 8th day of May, 1852. On the trial, the defendants in error proved that they had been married, and that Lutia Ann was the widow of one Emanuel Cawker before her marriage to Rice; that the goods alleged to have been sold to Norval were her sole and separate property, left her by her former husband, and that the said Rice had no interest in them whatever. They further proved that the sum due from Norval was one hundred and sixteen dollars and seventy-four cents, and then rested their cause. The defendant below moved for a nonsuit, on the ground that Rice was improperly joined in the action; that the suit should have been brought in the name of Lutia Ann. The court overruled the motion, and judgment was rendered for the defendants in error, to which the counsel for plaintiff in error excepted, and the cause was brought to this court by writ of error.

*J. R. Bennett*, for plaintiff in error, argued the following points: that the act of 1850, providing for the protection of married women, has changed the common law rule in reference to the joinder of husband and wife in actions for the recovery of her separate estate.

The effect of marriage in courts of law is to deprive the wife of all separate legal existence; her

Dec. Term 1853.

Norval
vs.
Rice.

husband and herself, in law, being but one person. All chattels personal of the wife are, by marriage, absolutely given to the husband. *Chitty's Pleadings.*

If the personal estate of a married woman is not subject to the disposal of her husband, it must be at her own disposal, and, if so, she may sell it, or make any contract in relation to it, as if she was unmarried ; and it would seem to follow, that if any person refused to perform his contract with her, she could compel him to respond in damages in a suit brought in her own name.

The law directing the number and mode of empannelling jurors in County Courts, violates the "right of trial by jury." The phrase is taken from the common law, where it means the right of being tried by twelve good and lawful men. *Bacon's Ab.*, vol. 3, *p.* 230–4; *Cro. Car.* 259 ; 1 *Sid.* 233 ; 3 *Keb.* 326; *Bouvier's Law Dic.* vol. 1, *p.* 733.

If the right of trial by jury means the right of trial by *twelve* men, it is unnecessary to add that a law limiting the number to *six* impairs that right, and is therefore void. 5 *Smedes & Marsh,* 664 ; 4. *U. S. Dig. Sup.* 404 ; 1 *U. S. Dig.* 563 ; 9 *do.* 100.

*D. Noggle,* for defendants in error. Did the court err in refusing a jury of twelve men? *Rev. Stat. p.* 435, § 16 ; 2 *Kent's Comm. p.* 13, *note.*

The court correctly ruled that such suits must be brought in the name of both husband and wife. *Rev. Stat. p.* 540, § 51 *to* 58 ; *Reves' Domestic Relations, chap.* 10, *p.* 126 ; 13 *Penn. R.* 481.

*By the Court*, CRAWFORD, J. The principal ques-

tion involved in this case is whether, under the Constitution, the defendant below, who is now plaintiff in error, was entitled to a trial of the issue joined in the case, by a jury of twelve men, when he demanded the same, and paid the usual jury fee into court.

Section 2 of Article VII. of the Constitution, empowered the Legislature to establish inferior courts in the several counties of the State, with limited *civil and criminal* jurisdiction; and in pursuance of this power, chapter 86 of the Revised Statutes was enacted. By this chapter, the County Courts of this State were organized.

Section 16 of this chapter provides: " If an issue of law be made in the cause, it shall be tried by the court ; if an issue of fact, it shall, on demand of either party, as hereinafter provided, be tried by a jury, *to consist of not more than six persons*, and if no jury be demanded by either party, the issue shall be tried by the court."

By the twenty-third and twenty-fourth sections, appeals from the judgments of County Courts are prohibited, but the same may be removed to the Supreme Court by writs of error. Under these provisions, a party may have a trial by jury, but this jury can consist of no more than six men, and the question at once presents itself, is this such a *trial by jury* as is contemplated by section 5 of article 1 of the Constitution? This section declares, " The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy."

It would be a bootless task to trace the origin of trial by jury, or to ascertain whether it had an exist-

Dec. Term
1853.

Norval
vs.
Rice.

ence before the Norman Conquest; our present purpose will be sufficiently promoted by determining what the signification of the phrase *trial by jury* is, as used by common law writers; for the common law meaning of the tern is that which must be resorted to in construing this provision of the Constitution.

Lord Coke, in treating of the different modes provided for the trial of facts under the English law, says: "Of these, a trial by *twelve* men is the most frequent and common." "And in ancient time, they were *twelve* knights. This trial of the fact *per duodecim liberos et legales homines*, is very ancient." Again he says: "Albeit the words of the writ be *quod faciat duodecim liberos et legales homines de vicineto*," &c., "yet, by ancient course, the sheriff must return twenty-four, and this is for expedition of justice; for if twelve should only be returned, no man should have a full jury appear, or be sworn in respect of challenges, without a *tales*, which should be a great delay of trials. So, as in this case, usage and ancient course maketh law; and it seemeth to me that the law in this case delighteth herself in the number of *twelve;* for there must not only be *twelve jurors for the trial of matters of fact*, but twelve judges, of ancient time, for trials of matters of law in the Exchequer Chamber." *Co. Litt. book* 3, *chap.* 9.

In Crabb's History of English Law, chap. 9, p. 124, we are told that the trial by jury, in its modern sense, was, during the reign of Henry II., in the twelfth century, partially applied to criminal matters, for it was directed by the Constitution of Clarendon, that if nobody appeared to accuse an offender before the archdeacon, the sheriff, at the request of the bishop, "*faciat jurare duodecim legales homines de vicineto*," &c.

So, also, in Blackstone's Commentaries, vol. 3, p.
351, it is said in relation to the *ordinary* trial by jury
after issue joined, " the court awards a writ of *venire*
*facias* upon the roll or record, commanding the sheriff
that he cause to come here on such a day, *twelve* free
and lawful men, *liberos et legales homines*, of the body
of his county, by whom the truth of the matter may
be better known," &c.

"The trial *per pais*, or by a jury of one's country,
is justly esteemed one of the principal excellencies of
our Constitution ; for what greater security can any
person have in his life, liberty or estate, than to be sure
of not being divested of, or injured in any of these,
without the sense and verdict of *twelve* honest and
impartial men of his neighborhood ?   And hence we
find the *common law herein* confirmed by *Magna Char-
ta.*"  *Bacon's Ab., Title "Juries," vol. 5, p.* 308.   And
again, on page 314 it is said : " The grand jury, as has
been already observed, must consist of twelve at least ;
*the petit jury of twelve, and can be neither more nor
less ;* but it it is said that particular inquests may con-
sist of a more or less number than twelve.   But on a
writ of error, a judgment out of an inferior court was
reversed, because, being by default, the inquiry of
damages was only by two jurors, and though a custom
was alleged to warrant it, yet it was resolved that
there could not be less than twelve, though the writ
of inquiry saith only *pro sacramentum proborum et
legalium hominum*, and not *duodecim*, as in a *venire.*
Also, it hath been frequently holden that a custom in
an inferior court to try by six jurors is void."

In the third volume of his *Lectures on the Law of
England, p.* 199, Professor Woodesson says of trial by
jury : " Where no challenge is taken either to the

whole array, or to the jurors individually, *twelve* of them are sworn to 'well and truly try the issue joined between the parties,'" &c.

Sir Matthew Hale says (2 *Hale's P. C.* 161): "But in case of a trial by the petit jury, it can be by no more nor less than twelve;" and (*p.* 296) "if only eleven be sworn by mistake, no verdict can be taken of the eleven, and if it be, it is error."

"The petit jury when sworn, must consist precisely of twelve, and is never to be either more or less on the trial of the general issue." 1 *Chitty's C. L.* 505.

In the case of the *State vs. Cox*, 3 *English's Rep.* 436, the precise question now under consideration was determined, and we find the subject thus disposed of: "An objection is taken to the eleventh section of the act limiting the number of the jury to six men. The right of trial by jury is a constitutional right. From the earliest period of the common law, the term *jury* has had a technical and specific meaning, and has ever signified 'a body of twelve citizens, duly qualified to serve on juries, empannelled and sworn to try one or more issues of fact submitted to them, and to give a judgment respecting the same, called a verdict.' The Constitutional provision, securing the right of trial by a jury, means a jury of twelve men, according to the known technical meaning of the term. Of his right to such a jury, the defendant cannot be deprived, except by his own consent. True, he may waive the right and submit to a decision of six men, even to that of the justice of the peace himself, but in all cases where he may require it, it is the duty of the justice to empannel a legal jury of twelve men for the trial of the cause."

The Supreme Court of Pennsylvania, in the case of

*Doebler vs. The Commonwealth*, 3 *Serg. & R.* 237, held a conviction wrong, because from the record it did not appear that the defendant was tried by twelve jurors; and in the Supreme Court of Indiana, a conviction by a jury consisting of only eleven men was held erroneous, because twelve had not been empannelled. *Jackson vs. The State*, 6 *Blackf.* 461.

The same point has been decided in *Tillman vs. Ailles*, 5 *Smedes & Marsh*, 373; *Wolfe vs. Martin*, 1 *How. Miss. Rep.* 30; *Dixon vs. Richards*, 2 *id.* 171; *Bone vs. McGinley*, 7 *id.* 671.

We have already said that the meaning of the language used in our Constitution must be gleaned from the common law, and this is because of the peculiarity of the language. "The right of trial by jury shall *remain* inviolate;" that is, it shall continue as it was at the time of the formation and adoption of the Constitution by the people of this State.

This right, "*according to the course of the common law*," was guaranteed to the people of the Northwest Territory by Article 2, of the Ordinance of July 13th, 1787. While under a territorial form of government, it was the right of the people of Wisconsin, secured to them in common with all others to whom the federal courts were open, under Article 7, of the Amendments to the Constitution of the United States, adopted September 13, 1788.

Now it will be remembered, that at the time of the formation of our Constitution in 1848, the judicial system in existence in Wisconsin Territory was composed of a Supreme Court, in which no questions of fact were tried by a jury; District Courts, in which grand and petit juries were empannelled, the latter consisting of *twelve* men; Courts of Probate, wherein

a jury was not used; and courts of justices of the peace, in which, in actions of forcible entry and detainer, a jury of twelve, and in all other cases of trial, of six only, was allowed.

So far as the restriction of the jury before a justice of the peace is concerned, we do not feel at liberty to inquire at this time, but may remark that the party aggrieved by the decision before the justice, might, in certain cases, remove the case by appeal to the District Court, where a trial by a jury of twelve men would be available.

But it is certain that when our Constitution was adopted, we had no court of record in existence in Wisconsin, in which the number of the jury for trials of fact in any case, except by consent, could be less than twelve; so that it cannot be said that when a trial by jury, in a court of record such as the County Court, must be by a jury of six persons and no more, the trial by jury in a court of record which has been enjoyed before the adoption of the Constitution, *remains inviolate.*

In our view of the provisions of the Revised Statutes concerning County Courts, where they restrict the jury to *six* persons, they conflict with the enjoyment of a constitutional right, secured to every citizen, namely, the right of trial by a jury of *twelve* men; and we therefore hold, that when the defendant in the court below was denied a trial by a jury consisting of twelve men, he was deprived of a right secured to him by the Constitution.

This was not the fault of the judge of that court; it is a defect in the law, which afforded him no means of procuring a constitutional jury. It is always a delicate matter for courts to declare a legislative enact-

ment unconstitutional; but whenever, as in this case, the operation of the statute must cause a deprivation of a right secured by the Constitution, the courts have no alternative—the statute must yield.

Another question of some interest is presented by the record in this case, namely: can husband and wife join as plaintiffs in an action for the recovery of the price of goods sold by the wife *dum sola*, which goods were of "her sole and separate property"? The "act to provide for the protection of married women in the enjoyment of their own property," approved February 1, 1850, (*Session Laws of* 1850, *chap.* 44,) certainly goes far towards clothing one class of females with strange and manly attributes; yet it is a meritorious statute, designed to remedy a supposed evil of the common law, and therefore it ought to be liberally construed.

Before the passage of this act, marriage deprived the wife of the right to maintain an action *in her own name alone*, upon contracts made by her before marriage. In some cases, where the law deems her the *meritorious* cause of action, as in covenant concerning her lands, on *bonds* given to her during coverture, on promises made to her for her services, and for the wife's *choses in action*, not reduced to possession by the husband, the wife may be joined in the action. It is said to be a rule, that in all cases where the cause of action by law survives to the wife, she must be joined in the action; (*Clapp vs. Inhabitants of Stoughton*, 10 *Pick.* 463;) but the general rule is, that the marriage takes away her separate *legal* existence, so that, except in some cases, she could not sue apart from her husband. *Clapp vs. Inhabitants of Stoughton, supra;*

Dec. Term
1853.

*Roper on Husb. & Wife, vol.* 1, *chap.* 5 ; 1 *Chitty on
P.* 28.

Norval
*vs.*
Rice.

But under the act of 1850, the wife is endowed with all the necessary incidents of separate ownership in property, real and personal, which is declared to be neither subject to the husband's disposal, nor liable for his debts ; and we think it a necessary consequence that the wife should be equally as independent of her husband in the assertion and maintenance of her rights in courts of justice, when those rights flow from, or pertain to, her separate property, as she is declared to be in its ownership. Any other conclusion might, in many instances, greatly frustrate the beneficent object of the law ; for if she were not permitted to sue without joining her husband, in actions concerning her separate estate and property, the husband, by refusing to join in the suit, might greatly control, if not take away, the wife's rights. We therefore think, that in a case like the present, the wife may sue without her husband being joined. But we also think that the action may be brought by husband and wife jointly. In the case of *Goodyear vs. Rumbaugh and wife,* 13 *Penn. R.* 480, the Supreme Court of Pennsylvania were called upon to put a construction on a statute similar to ours, relating to the property of married females, where it was objected that the husband and wife could not be joined in an action to recover money belonging to the wife, and lent by her ; Judge Rogers, in giving the opinion of the court, holds that the action might be brought by husband and wife jointly, or by the wife alone. He says : " We can see nothing in the exception of which the defendant can complain. He has two, instead of one, answerable for costs. In construing this statute, which is a just and remedial

one, we are not disposed to trammel it with forms."
And again : " But although she may bring suit in her
own name, it does not follow she must ; for we are of
opinion the suit is not open to exception, whether
brought in her own name, or in the name of herself
and husband.  In no case, however, can the husband
alone bring the suit for an injury done to her proper-
ty."

The judgment of the County Court must be re-
versed, with costs, and the cause must be remanded
for a new trial.