HOLT *v.* LYNCH *et als.*

Decided November 12, 1881.

1. Where there is a material variance between a forthcoming bond and the execution, upon which it is taken, the bond should be quashed.

2. Where the forthcoming bond in its condition recites, that the amount due on the execution with the fee for taking the bond and the sheriff's commissions is larger, than is in fact due, this is not a variance for which the bond will be quashed, but judgment should be rendered for the actual amount due.

3. If this is not done in the lower court, its judgment will be reversed; and judgment will be entered in the Appellate Court for the true amount due.

4. Where the execution is against four persons, and the forthcoming bond recites, that the execution was against three, it is a material variance, for which the bond should be quashed.

5. If after judgment in a personal action one of several defendants dies, execution may issue against the survivors without any suggestion as to the death of the one; but such execution must be in the names of all the defendants in like manner, as if no death had taken place.

6. An execution issues in the name of four judgment-debtors, George Lynch, Jr., George Lynch, George W. Silcott and Peregrine Hays; the clerk ssuing the execution endorses thereon, "the defendant, George Lynch, has departed this life"; there is no law requiring or authorizing such endorsement; and it is a mere nullity, having no effect upon the execution or the sheriff's duties under it.

7. The sheriff in taking a forthcoming bond on this execution recites in the condition, that the execution was against three, omitting the name of the decedent; this is a material variance and the bond should be quashed.

Appeal from and *supersedeas* to a judgment of the circuit court of the county of Gilmer, rendered on the 16th day of March, 1876, in a cause in said court then pending, wherein John F. W. Holt was plaintiff, and George Lynch, Peregrine Hays and Absalom Knotts were the defendants, allowed upon the petition of said defendants.

Hon. John Brannon, judge of the sixth judicial circuit, rendered the judgment appealed from.

Patton, Judge, furnishes the following statement of the case :

This was a motion to quash a forfeited forthcoming bond in the circuit court of Gilmer county, on the 16th day of March, 1876, because of variance between the bond and the execution, upon which the bond was taken. The court overruled the motion to quash and gave judgment and awarded execution in favor of the obligee, J. F. W. Holt, against the obligors, George Lynch, Peregrine Hays and A. Knotts, for the sum of $1,019.59 with interest thereon from the 2d day of August, 1875, and the costs. The execution with the endorsement of the clerk thereon and the bond was as follows, to wit :

EXECUTION.

"THE STATE OF WEST VIRGINIA,

  "*To the Sheriff of Calhoun County, Greeting :*

"We command you, that of the goods and chattels of George Lynch, Jr., George Lynch, George W. Silcott and Peregrine Hays, late in your bailiwick, you cause to be made the sum of $440.00 principal and $2.20 charges of protest, ($440.00 and $2.20 costs), with interest thereon from the 2d day of August, 1875, until paid, which John F. W. Holt, late in the circuit court of Gilmer county, recovered against them for debt and charges of protest; also the sum of $16.48 which by the same court was adjudged him for costs by him about his suit in that behalf expended, whereof the said George Lynch, Jr., &c., are convicted, as appears to us of record, and how you shall have executed this writ make known at rules to be held in the clerk's office of our said court on the 1st Monday in June next. And have then there this writ.

"Witness, C. B. Conrad, clerk of our said court, this 19th day of April, 1875, and in the twelfth year of the State.

                                        "C. B. CONRAD."

ENDORSEMENT BY CLERK.—"The defendant, George Lynch, has departed this life.

                "Teste :

                            "C. B. CONRAD, *Clerk.*"

BOND.

"*Know all men by these presents,* That we, George Lynch, Jr., Peregrine Hays and Absalom Knotts, are held and firmly bound unto John F. W. Holt in the penal sum of $1,200.00, to which payment, well and truly to be made, we bind ourselves and each of our executors and administrators, jointly and severally, firmly by these presents. Sealed with our seals and dated this the 2d day of August, 1875.

"The condition of the above obligation is such, that whereas the above named John F. W. Holt has sued out of the clerk's office of the circuit court of Gilmer county a writ ·of *fieri facias* for taking the goods and chattels of the above bound George Lynch, Jr., George W. Silcott and Peregrine . Hays, which writ is directed to the sheriff of Calhoun county,

and by virtue thereof the following goods and chattels, to wit, four head of horses, eight head of cattle, one wagon, six head of hogs, three plows, property of George Lynch, Jr., and nineteen head of cattle, two yoke of oxen, one white yoke and one red yoke, four cows, one wagon and one mowing machine, property of Peregrine Hays, have been taken by Rufus Knotts, deputy for James Barr, sheriff of Calhoun county, to satisfy the said *fieri facias*, the amount whereof at this time, including the sheriff's fee for taking this bond, sixty cents, and commissions, is one thousand nineteen · dollars and fifty-nine cents, ($1,019.59), and the said George Lynch, Jr., and Peregrine Hays, the owners of the goods and chattels so taken desire that the said goods and chattels so taken remain in their possession at their risk until the day of sale, and have offered to give sufficient security to the said sheriff to have the same forthcoming at that time: Now, if the said George Lynch, Jr., and Peregrine Hays shall have the said goods and chattels forthcoming on the 23d day of August, 1875, at the court-house of Calhoun county, in Grantsville, the day and place appointed by the said sheriff for sale of the goods and chattels, then the above obligation to be void, otherwise to remain in full force and virtue."

From the judgment of the court below, the obligors obtained a writ of error and *supersedeas* to this Court.

No appearance for appellants.

*J. M. Bennett,* for appellee, relied on the following authorities: 1 Pet. 683; 7 Curtis's Dig. 1768; 2 Cranch 9.

PATTON, JUDGE, announced the opinion of the Court:

It is obvious, that in taking the bond in this case the sheriff made a considerable mistake in the amount of the execution with its interest, his fee for taking the bond and his commission, which together, he recites in the bond, amounted to the sum of $1,019.59 when in fact they aggregate several hundred dollars less than that sum. The court below awarded execution for the amount named in the bond instead of for the correct amount due on the execution, the fee for taking the bond and the sheriff's commissions. This, it would seem, was through inadvertence, as it is not made the subject of as-

signment of error in this Court or referred to at the bar.   It was error to award  execution  for that  sum ; and the judgment of the  lower court  in that  respect must be reversed. and judgment entered here for the corrected amount due, (*Belle & Harrison* v. *Marr*, 1 Call 47 ;  *Scott* v. *Hornlsby*, 1 Call 41 ;  *Worsham* v. *Eggleston*, 1 Call 48 ;  *Wilkinson*  v.  *McLochlin & Co.*, 1 Call 49 ;  *Osborne* v.  *Crawley*, 1 Va. Cas. 113 ; *Williams* v. *Lyles*, 2 Cranch 97), unless there is some other ground of objection to the judgment of the lower court, which will prevent a judgment at all against the obligors in this bond.

The only ground,  assigned  in  the petition for  appeal, of variance between the execution and the bond is, that the execution issued against four persons :  George Lynch, Jr., George Lynch, George W. Silcott and Peregrine Hays, while the bond recites, that it was taken upon an execution issued against three persons: George Lynch, Jr., George W. Silcott and Peregrine Hays.   Where there is a material variance between the execution and the bond, the bond must be quashed. (*Glasscock's adm'x* v. *Dawson*, 1 Munf. 605 ;  *Couch* v. *Miller*, 2 Leigh 545.)   What is a material variance, has been discussed in a number of cases in Virginia.   Without discussing the subject here it is only necessary for  the purposes of this opinion to say, that it has been  distinctly held  in  Virginia, that if the execution issue  against two persons, and the condition of the bond recites it to  have been against one only, the variance is material, and the bond should be quashed. (*Jett* v. *Walker*, 1 Rand. 212 ;  1 Rob. (old) Pr. 593.)

The execution in this case on its face is an execution against four persons; and the bond recites an execution against three only.   If this was the only question raised by  this execution and bond, there would be no difficulty upon  the authority of *Jett* v. *Walker* and 1 Rob. in determining, that there was such a variance as required the quashing of the bond.   But it is claimed, that one of the  judgment-creditors died, before the execution issued, which fact is endorsed on the execution, and that the legal effect of the execution thus endorsed with the fact of the death was to make it really an execution against the survivors, and that the sheriff  properly recited the writ in the bond according to that legal effect, that he was not bound

to follow the letter of the writ, but could recite it, as it was in law, as an execution against the three.

It is necessary then to consider, what effect the death of one of several judgment-debtors has upon the right to sue out execution by the judgment-creditor. If such death has any effect upon his rights in that regard, to what extent and in what way are his rights affected? At common law in personal actions, if the plaintiff did not sue out execution within a year and a day after the judgment, his right to sue out execution was lost altogether, and his only remedy was an action of debt upon the judgment; but by the statute of Westminster 2, if he failed to sue out execution within the year and day, instead of " being driven to his new original " he was allowed to revive the judgment by *scire facias*, 3 Tho. Co. Litt 525 : 2 Inst. 469–471; Carr, Judge, in *Allen et als.* v. *Cunningham et als*, 3 Leigh 401. But at common law where execution was sued out within the year and one of the parties died, instead of being put to a new action he was entitled to revive by *scire facias* upon the principle, that where one is to be charged or to have a benefit from a judgment, to which he is not a party, he is entitled to be made a party to the judgment. *Pennoir* v. *Brace*, 1 Salk. 319 ; 2 Inst. 471.

It seems at one time to have been much doubted, whether this right to a *scire facias* in such case was a right at common law or by virtue of the statute Westminster 2. In *Allen et als.* v. *Cunningham et als*, 3 Leigh 401, Judge Carr seems to have thought, that it was by virtue of that statute. He says : " Where a new person, who was not a party to the judgment, derives a benefit by, or becomes chargeable to, the execution upon it, there must be a *scire facias* to make him a party to the judgment, 2 Wm. Saund. 6, note 1, 72 e. note 3. *At common law* no *scire facias* would issue on a judgment except in real actions. In all personal actions, where the lapse of time or the change of parties had been such as to prevent the taking out execution, the party entitled to the judgment was obliged to bring an action of debt on it, 2 Inst. 269. To remedy this inconvenience the statute of Westminster 2, 1 Ed. I. ch. 45, gave a *scire facias* in personal actions."

Green, Judge, in the case of *Dykes & Co.* v. *Woodhouse's adm'r*, 3 Rand. 291, disagrees with this view of Judge Carr,

that the *scire facias* sprang from the statute of Westminster 2, but claims, that it existed at common law, and that the statute only covered, so far as it regards this question, those cases where the execution was not sued out within the year. He says: " It is said, that the *scire facias* in personal actions was given by the statute Westminster 2, ch. 45, and did not exist at common law, Bac. Abr. *scire facias* c. 1. Lord Holt, in *Withers* v. *Harris*, 2 Salk. 600, doubted whether this was true as a general proposition, but submitted to the weight of authority. I think any one, who will examine the statute at large, will agree with Lord Holt. It will be found, that the statute gives only a *scire facias* after the year and the day instead of a new action, which was necessary at the common law ; and a *scire facias* against the ordinary, and these are the only cases expressly provided for. No *scire facias* is given to an executor and of course not to an administrator; for an administrator could not then sue at all in right of his intestate. If the great variety of *scire facias* in England sprang out of this statute, it must have been upon a most uncommonly liberal construction. It is however immaterial, from what source this process was derived, whether from the common law or statute. It came to us upon the settlement of the colony."

Robinson in his old Pr. 574 agrees with Judge Green in his view of this matter, and commenting upon Judge Carr's view of it and 2 Inst. 469, 471 and 3 Inst. 525 says: " The proposition is often laid down, that the writ of *scire facias* did not lie at common law upon a judgment in a personal action, but was first given by the statute of Westminster 2. (See Carr, Judge, in *Allen et als.* v. *Cunningham et als.*, 3 Leigh 401.) By this it is only to be understood, that before the statute of Westminster 2 no *scire facias* would lie upon a judgment in a personal action, where the plaintiff had failed to sue out execution within the year. This is clearly Lord Holt's meaning in the passages, which have been quoted from 1st and 2d Institutes. He does not mean to say, that by the statute Westminster 2 a *scire facias* is given to an executor or administrator or against an executor or administrator or in any other case, where the parties upon the record are charged. The statute makes no provision for cases of this

description. It leaves them as they were at common law.''

From a consideration of these authorities I understand the law to be, that at common law before the statute of 2 Westm. the judgment-creditor was entitled to sue out a *scire facias* at common law and proceed to his execution in those cases, where he desired to charge in execution a person, who was not a party to the judgment, that is, where the original party to the judgment is dead, and it is desired to charge his representative. But if there was any party to the judgment still surviving, although one or more in the same interest was dead, he was not put to his *scire facias* to revive, but could proceed in execution against the surviving party. In the case of *Pennoir* v. *Brace*, 1 Ld. Raym. 245, it is held, that the death of one of the defendants does not abate the judgment or necessitate a *scire facias*, but execution may issue on the judgment, but it must follow the judgment and be in the name of all the defendants, otherwise it would be variant from the judgment, "unless cause for omitting any appears on the record." In *Pennoir* v. *Brace*, (S. C.) 1 Salk. 319, one of the defendants died pending a writ of error to the judgment. It was held, that the writ of error was abated by the death, and that execution could go without *scire facias*, but it must be in the name of all the judgment-debtors. If it was in the name of the survivors, it was erroneous.

In the case of *Withers* v. *Harris*, 2 Ld. Raym. 808, Lord Holt says: "Where there are several plaintiffs or defendants and one of them dies, execution may be sued by or against the survivors upon suggestion of the death made upon the roll." In this case Lord Holt does not say, in what form the execution shall issue, as is said in 1 Salk. 320 and 1 Ld. Raym. 245 ; but as he delivered the opinion in each of these cases, the language, "execution may be sued out against the survivors" must be understood as meaning merely, that the death of one of several execution-debtors did not necessitate a *scire facias*, but execution could issue notwithstanding that death, just as if the death had not occurred, in the name of all the debtors to conform to the judgment.

In 2 Wm. Saund. 72, *i* note it is said: " But it seems clear, that where there are two or more plaintiffs or defendants in a personal action, and one or more of them die after judgment,

execution by *fi. fa.* or *ca. sa.* may be had within the year
for or against the survivors without a *scire facias*. Moore
367; *Pennoir* v. *Brace*, 1 Ld. Raym. 244; *Same Case*, 1
Salk. 319; Carth. 404; Comb. 441; 5 Mod. 338; 1 Show.
402; *Howard* v. *Pill*, 7 Mod. 68; *Withers* v. *Harris* S. P;
but the execution must agree with the judgment, and there-
fore the execution must be sued out in the joint names of all
the plaintiffs or defendants, otherwise it will not be warran-
ted by the judgment. 1 Ld. Raym. 244; *Pennoir* v. *Brace*,
1 Salk. 319."

I think it clear from a review of all these authorities, that
an execution could be sued out at commom law without a
*scire facias* against execution-debtors, though one or more
die, if any survived; but that such execution must be in the
name of all of them, the dead as well as the living, because
an execution must conform to the judgment, upon which it
issues, and an execution against three would not conform to
a judgment against four. I do not understand what Lord
Holt means in *Withers* v. *Harris* by saying, that in such case
execution may issue " upon suggestion of the death made
upon the roll," if that language was used with reference to
all cases, where one of the several joint plaintiffs or defend-
ants had died, because I see no reason to make a suggestion
upon the roll of a fact, that cannot in any way affect the
issuing of the execution. If that suggestion resulted in an
execution issuing in the name of the *survivors* only, as would
seem to be intended at first blush, there would be reason for
suggesting the death upon the roll; but as has been shown
by other cases decided by Lord Holt, he did not intend that.
In the cases of *Pennoir* v. *Brace*, 1 Ld. Raym. and *Pennoir*
v. *Brace*, 1 Salk. where five were sued in trespass, and judg-
ment against all, and a writ of error was allowed in their
favor, and pending that error one of them died, which abated
the writ, the plaintiff sued out execution without suggesting
the death upon the record, this execution was held to be erron-
eous, " because the death of the party did not appear to them
by any matter of record, and until they were so apprised of
it, they were bound up by the writ of error."

It is plain, that where the judgment has been superseded,
and the *supersedeas* abated by death, that death must be sug-

gested, and the writ of error abated of record, before execution could issue. I take it, that except in such case, or where some special reason existed, in order to sue out execution, the death need not be suggested. I do not find in any other case, in speaking generally of the right to sue out execution, where one of several parties had died, that it is said, that the death must be suggested upon the roll. I can see no sort of occasion for such suggestion, as it has no virture or effect either upon the form or effect of the execution. Mr. Robinson (1 Old Pr. 575) says: "In England, where judgment is in behalf of several plaintiffs or against several defendants, and one of them dies, execution may be sued out without a *scire facias* upon suggestion of the death made upon the roll. Holt C. J., in *Withers* v. *Harris*, 2 Ld. Raym. 808. In such case the execution does not issue merely in the names of the surviving plaintiffs or against the surviving defendants omitting the decedent, because that would be variant from the judgment, on which the execution is founded; but the same persons are named in the execution, who were parties to the judgment. *Pennoir* v. *Brace*, 1 Ld. Raym, 245. In Virginia there is no such thing as an entry upon the roll, but the execution issues without any such entry, in like manner as if no death had taken place, and the officer levies the execution and pays over the proceeds as he would in case the name of the decedent was not included in the execution." It is evident that he did not think the suggestion of death upon the roll effected any purpose or varied in any way the rights of the parties.

In the case of *Erwin's lessee* v. *Dundas et al.*, 4 How. 58, Mr. Justice Nelson in delivering the opinion of the court uses this language: "The writ however must be in form against both to correspond with the record, but it could be executed against the goods of the survivor only; or on making a suggestion of the death upon the record the writ could be against the survivor alone." He cites for this position 2 Tidd. 1120; 1 Salk. 320; Bing. on Executions 136; *Norton* v. *Lady Harvey*, 2 Wm. Saund. 50, 51 n. 4 and 72 n. 3; 16 Mass. 212 n. 2; 1 Cow. 738. I have examined these authorities and do not find one, that supports the latter point of the statement, that upon the suggestion of the death upon the record the

writ could be against the survivor alone.   This position is contradicted by the authorities, which I have commented upon and quoted from, some of which are referred to by Mr. Justice Nelson.   1 Salk. 320 ; 2 Wm. Saund. 72.

In Bing. on *Ex.* 136, this language is used :  " And it is now clear, that where one or more of two or more plaintiffs or defendants in a personal action die *after* judgment, execution by *fi. fa.* or *ca. sa.* may be had for or against the survivors without a *sci. fa.;* but the execution must agree with the judgment and be sued out in the joint *names* of all the parties, otherwise it would not be warranted by the judgment."

I do not find any reference to the subject in Tidd's Pr. on p. 1120; but on page 1171 I find :  " And it is now settled, that when there are two or more plaintiffs or defendants in a personal action, and one or more of them die, within a year after judgment, execution may be had for or against the survivors without a *scire facias ;* but the execution in such case should be taken out in the joint names of all the plaintiffs or defendants, otherwise it will not be warranted by the judgment."

In note 4, 2 Wm. Saund. 50, 51, I find :  " But it was said, that if he bring *scire facias* against both," that is, the survivor and the heir of the decedent, " and has judgment upon it, he may have a *fieri facias* against the survivor only or an *elegit* against both."   Unquestionably this is so, because the judgment is rendered against the survivor, and an execution to conform to that judgment must be against the survivor only, the very reason, I think, that without a new judgment upon *scire facias* no suggestion upon the roll or record or elsewhere can authorize an execution against the survivor alone, but in conforming to the judgment must be against all. The reference to n. 2 16 Mass. 193, simply refers to 2 Ld. Raym. 808, *Wither's* v. *Harris*, without comment upon that decision, and in connection with the proposition, that " one who has recovered judgment for possession of a certain parcel of land may, as it is said in the books, enter peaceably without the aid of the sheriff, and if an action is brought against him for the entry, he may defend himself under the judgment."

In 1 Cow. 711, in the case of *Woodcock* v. *Bennett*, the doc-

trine is laid down almost in the language given above from Bing. on Executions 136, and Tidd's Pr. 1171. Judge Wood in delivering the opinion of the Court says: "It is a settled and inflexible rule, that the execution as issued, must be warranted by the judgment." With the exception of the language of Lord Holt in *Withers* v. *Harris*, which I think must be construed with reference to such facts, as existed in 1 Ld. Raym. and 1 Salk., I can find no reference to the necessity for an entry upon the roll or elsewhere, to entitle a plaintiff to sue out execution ; and I can see no sort of occasion for such a requirement. It would be a vain and useless act. I conclude, that it was not necessary to suggest the death of one or more plaintiffs or defendants, in order to sue out execution ; but execution could issue, just as if no death had occurred, but must include all the parties. But whatever may be the correct conclusion on that subject, so far as the practice in England is concerned, as is said in 1 Rob. (old) Pr. 575, in Virginia there is no such thing as an entry upon the roll, but the execution issues without any such entry, in like manner as if no death had taken place.

It has been suggested, that not having such a proceeding as an entry upon the roll, the endorsement by the clerk under our practice of a suggestion upon the execution, or upon the face of the execution would be analogous to the entry upon the roll in England, and that the legal effect of the execution in this form or thus endorsed would be an execution against the survivors. In my view of the law there is no occasion whatever for a suggestion anywhere or by any one, but the execution goes " in like manner, as if no death had taken place." But if such a suggestion were necessary, I know of no authority upon the part of the clerk to make an endorsement of the death, and without such authority such endorsement would be without effect ; nor can I see the necessity for introducing such a practice. It does not benefit or charge any one or change the rights of any one in any respect whatever and would be productive of no good, that I can discover.

It follows from these views, that the endorsement of the death of George Lynch on the execution in this case did not work any change in the execution whatever, that in law it was an execution against all four of the parties, " in like man-

ner, as if no death had taken place," and that the bond in re-
citing it as an execution against three was variant from the
execution and should have been quashed.

The judgment of the court below must be reversed, and
judgment entered in this Court for the appellants with costs.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.