# WHEELING.

## CAREY & Co. v. BURRUSS AND PITZER.

Submitted January 19, 1881—Decided November 11, 1882.

(*SNYDER, JUDGE, Absent.)

1. A court of law in this State will hold the contract of a married woman, living with her husband, whereby she professed to form mercantile partnership with a third party, as an absolute nullity. (p. 579, 582.)

2. A married woman cannot be sued in a court of law in this State, on any contract made while she was living with her husband, either individually or jointly with another as her partner. (p. 575.)

3. But the person who has entered into a partnership with a married woman, living with her husband, may be sued at law in this State individually for a partnership debt; and if he plead, in abatement, that she was his partner and should be sued with him, the plaintiff could reply that, when the debt was contracted she was a married woman and such replication would be good. (p. 582.)

4. Or in such case, the plaintiff can travers the plea and allege, that she was not a partner of the defendant and on an issue joined on such replication if the the defendant proves, that she entered into articles of co-partnership with him, and the plaintiff proves she was, when such partnership was formed and when the debt sued on was contracted a married woman living with her husband, the jury should find a verdict for the plaintiff; for the married woman living with her husband, can not be recognized by a court of law, as a partner in business with any one. (p. 583.)

5. If a plea in abatement is filed, not at rules but at court, and issue is taken upon it and tried and the verdict of the jury is set aside and a new trial awarded, the plaintiff may then ask the court to set aside the issue and permit him to withdraw his replication to the plea. And this the court should permit him to do, and he may then ask the court to strike out the plea in abatement as being filed too late, and on his request this should be done. (p. 583.)

Writ of error to a judgment of the circuit court of the county of Monroe, rendered on the 19th day of May, 1879, in

---

*Cause submitted before Judge S. took his seat on the bench.

an action in said court then pending, wherein James Carey & Co., were plaintiffs, and Burruss & Pitzer were defendants, allowed upon the petition of said plaintiffs.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case :

James Carey and Charles Bangs, partners under the name and style of James Carey & Co., on July 19, 1878, sued in the circuit court of Monroe, F. N. Burruss & I. B. Pitzer, recently trading under the firm name of Burruss & Pitzer, and then trading under the firm name and style of Burruss & Co., in an action of debt for eight hundred and thirty-five dollars and thirty cents, damages two hundred dollars. A declaration was filed not necessary to be set forth, on the first Monday in September, 1878, and on the first Monday in October the office judgment was entered for the plaintiffs, and regularly confirmed; at the next term of the court, on October 14, 1878, the defendant, F. N. Burruss, filed two pleas, one the plea of *nil debit*, and the other a plea that he was not then and never had been, a partner of I. B. Pitzer, his co-defendant; which pleas were sworn to, and I. B. Pitzer, filed a plea in abatement, that the plaintiff's cause of action, if any, is jointly against him and one K. McK. Burruss, who at the time of the commencement of this suit was, and still is, living in Monroe county, West Virginia, who was and is his partner in said firm. This plea was also sworn to. These pleas were replied to generally, and issue was joined on them, and on May 14, 1879, a jury was sworn to try the issues joined, which found a verdict, "that Kate McK. Burruss, is a partner of the firm of Burruss & Pitzer, in the town of Alderson, Monroe county, West Virginia." The plaintiffs moved to set aside this verdict as the record states, "upon the plea of abatement in this cause, which motion was overruled and thereupon the court quashed the plaintiffs' writ and adjudged, that the defendant, I. B. Pitzer, recover against the plaintiffs his costs."

To the judgment of the court overruling the plaintiffs'

motion for a new trial, the plaintiffs excepted and the bill of exceptions sets forth all the evidence given on the trial. The bill of exceptions states, that this exception was taken on the trial on the issues on the plea in abatement, filed by I. B. Pitzer. The evidence proved, that on March 24, 1877, Kate McK. Burruss, entered into written article of partnership with I. B. Pitzer, her brother, whereby a partnership was formed known as Burruss & Pitzer, and they thereby constituted I. H. Burruss, the husband of Kate McK. Burruss, their agent to sell all their goods at Alderson, Monroe county, West Virginia; and conferred on him full authority to manage all their business as he pleased except, that he was to sell the goods for cash or its equivalent.

The fact, that F. N. Burruss, was acting as an agent for his brother-in-law and his own wife, was unknown to the plaintiffs or to the public; that nothing was ever said or done by F. N. Burruss, nor by any member of this firm, to indicate to the plaintiffs or to the public, that F. N. Burruss was not a member of the firm of Burruss & Pitzer, called afterwards Burruss & Co.; nor was any thing said or done to indicate to the plaintiffs or to the public, that Kate McV. Burruss, the wife of F. N. Burruss, was a member of said firm or claimed any interest in it. She had no separate estate and contributed nothing to the business except, about one hundred and fifty or two hundred dollars of goods, which her husband F. N. Burruss, assigned to her, being his interest in the goods of a firm of Burruss & Pitzer, which in 1874 was doing business in Alleghany county, Va. These goods were brought to Alderson, Monroe county, W. Va., in 1877, and placed in the store of Burruss & Pitzer, which was the time when articles of copartnership were signed, and this firm commenced business in Alderson, Monroe county, W. Va. The notes given to the plaintiff sued on were in the handwriting of F. N. Burruss, signed in the partnership name. The goods for which these notes were given, were bought by F. N. Burruss in person, for the firm. That he alone managed and controlled the business of the firm at Alderson. His wife took no part whatever, in the control of the business, and the public generally, as well as the plaintiff, always regarded

F. N. Burruss and I. B. Pitzer, as the partners in these firms. It was also proven, that when this partnership was formed and when the contracts were made, on which the suit was brought and when the suit was brought, Kate McK. Burruss, was a married woman living under coverture with her husband, F. N. Burruss, and not separate or apart from him, and she still is such married woman so living.

*Dennis & Dennis* for appellants cited the following authorities: 2 Kelly Stat. ch. 153, § 21; 1 Rob. Old Pr. 355; Bar. L. Pr. 230; 5 Rob. Pr. 16, 102; Sto. Partn. §§ 10, 64; 10 W. Va. 171; 6 Leigh 58; 2 Rand. 478; 21 Gratt. 281; Steph. Pl. 96–7; 1 Kelly Stat. ch. 12, § 11; 1 Gr. Ev. § 207; 8 Gratt. 9; 8 D. & E. 545; Coll. Partn. 7, 43; 53 Ill. 163; 43 Ill. 157; 47 Ill. 24; 24 N. Y. 383; 21 Penn. 349; 35 Pa. 375.

*John W. Harris* for appellees cited the following authorities: Code ch. 125 § 18; 12 W. Va. 350; 12 Gratt. 74; 17 Gratt. 503; 2 John. 279; 2 Rand. 478; 16 Gratt. 448; Code ch. 134, § 3; Kelley Stat. ch. 160, § 3.

GREEN, JUDGE, announced the opinion of the Court:

There were various questions mostly technical in their character, which have been argued by counsel in this case and the consideration of which I will not undertake, because I deem it unnecessary to decide them, as the case can be decided satisfactorily on its substantial merits. The principal question on its substantial merits involved in this case is, whether a married woman in this State living with her husband, can enter into a mercantile partnership with a third person, which a court of law could recognize so, that she and such third person could be sued at law for a partnership debt.

It is a fundamental principle of the common law universally recognized, that a married woman has no capacity to enter into any contract. Her contracts were not simply voidable as the contracts of an infant for the most part, but were absolutely null and void in a court of law. And of course therefore, she could at common law have entered into

no partnership, which a court of law would recognize; and of course she and her so-called partner, could not be sued at law on any so-called partnership debt. Lord Kenyon said in *Clayton* v. *Adams*, 6 F. R. 604: "If any one proposition of law be more clear than another it is that an *action* cannot be brought against a *feme covert*; a court of law cannot get at her property if she have any." To this rule there were but two exceptions, first, when her *husband* is *civiliter mortuous*, and secondly, under the custom of London she could carry on business herself. These exceptions have of course no existence in this country, so that without any exception in this country by the common law, no married woman can enter into any contract which a common law court would recognize. All her contracts were utterly null and void in a common law court.

But on the other hand, from the time courts of equity in England first began to recognize separate equitable estates in married women, they held, that there were some contracts of married women that they would not regard as utterly inoperative, null and void, as did the common law courts. And debts created by certain sorts of contracts could always have been enforced in a court of equity against a married woman's separate estate. What the character of the contract made by a married woman must be, and under what circumstances it must have been made to justify a court of equity in enforcing its payment out of the separate equitable estate of a married woman, has been to a large extent a subject of controversy in England. And the courts there, have at different times, varied in their decisions; and in this country there has been no uniformity in our decisions on this subject.

This contrariety of decisions are pointed out in *Radford* v. *Carwile*, 13 W. Va. 572. Our conclusion in that case was, that in this State, " the debts of a married woman for which her separate estate is liable in a court of equity, were such as arise out of any contract or transaction out of which a debt would have arisen if she were a *feme sole*, except that her separate estate is not bound by a bond or covenant based on no consideration."

The States of this Union including West Virginia, have very generally by statute law changed this equitable separate

estate of a married woman into a separate legal estate; but the courts of the different States have with great uniformity held, that this change by statute of the separate equitable estate of a married woman, into a separate legal estate, did not in a court of law remove her legal incapacity to enter into any contract generally, but that after such change any debt or obligation which arose out of a contract could, as a general rule, only be enforced out of her separate legal estate by proceedings in equity; just as before the passage of these statutes it was so enforced out of her separate equitable estate. Nor would a court of equity after the passage of these statutes which simply changed her equitable estate to a legal estate, enforce a debt unless the debt arose out of a contract or under circumstances under which it could have enforced such debt out of her separate equitable estate, prior to this converting of it into a legal estate by such statutes.

The authorities are very numerous which hold, that statutes which merely give to the wife a separate legal estate instead of the separate equitable estate she formerly held, do not by implication invest her with the power to make contracts generally, which would be recognized by a court of law, or in other words do now remove her legal incapacity to make contracts generally. Such statutes do not invest her with the power to contract generally, so as to bind her person as well as her separate estate, and therefore they do not make her liable to suits at law on her contract generally, but while such statutes do not enlarge her powers or remove her legal disability of coverture, they do not restrict or change the right of a court of equity to enforce the payment of a debt out of her separate legal estate under the same circumstances under which, before the passage of such statutes, they would have enforced the payment of such debt out of her separate equitable estate.

The following are a few of the very many cases in which these doctrines have been announced or acted upon: *Yale* v. *Dederer and wife*, 18 N. Y. 265; *Barnett* v. *Lechtenstein*, 39 Barb. 184; *Draper* v. *Stouvenel*, 35 N. Y. 507; *Ogden* v. *Blydenburgh*, 1 Hilton 182; *Ballin* v. *Dillaye*, 37 N. Y. 35; *Switzer* v. *Valentine*, 4 Duer. 96; *Wooster* v. *Northrup*, 5 Wis. 245; *Jones* v. *Crosthwaite*, 17 Iowa 393; *Parker's Exec.* v.

*Lambert's Admr.*, 29 Ala. 89; *O'Daily* v. *Morris*, 31 Ind. 111; *Fuller* v. *Bartlett*, 41 Maine 241; *Stevens* v. *Parish*, 29 Ind. 260; *Tracy* v. *Keith*, 11 Allen 214; *Bauer et ux.* v. *Bauer*, 40 Mo. 61; *Pond* v. *Carpenter et al.*, 12 Min. 430; *Pollen* v. *James*, 45 Miss. 129; *Whipple* v. *Giles*, 55 N. H. 139; *Ames* v. *Foster*, 42 N. H. 381; *Johnson* v. *Cummins*, 16 N. J. Eq. R. 97; *Kavanaugh* v. *Brown* 1 Texas 481. .

It is true, that while it is almost universally agreed, that the making of what has been a separate equitable estate of a married woman a separate legal estate, will not so remove her common law incapacity to make contracts generally, so as to render her liable to a suit at law on her contracts generally, yet a number of courts have held, that it so far removed her legal incapacity to make a contract, that it authorized her to make such contract with reference to her separate legal estate created by statute; as for instance a contract for labor on her farm and that on such a contract, she could be sued in a court of law. Thus in *Cooperson* v. *Toole*, 55 Ill. R. 515.

The court held, that upon such a contract she could be sued at law, though so far as appears from the report of this case, there was nothing in the Illinois statute law removing her legal incapacity to make such contract, the court implying, that it was removed in such a case by the statute law making her separate estate a legal instead of an equitable estate; but the contrary was held in the case of *Wooster* v. *Northrup*, 5 Wis. R. 245. The act of this Legislature, like our own, made what had been an equitable estate of a married woman a legal estatt. The court say: "This act is relied on by the plaintiffs in error." It then gives the substance of the second section of the act, which is substántially the same as the third section of chap. 6 of Code of West Va., p. 448, except that the proviso in this section is not contained in the Wisconsin statute. And the court then proceeds: "This case has been argued by the plaintiffs in error as though the act of the Legislature above cited, clothed married women with the same power, and imposed upon them the same responsibilities, in respect to maintaining and defending actions at law as belonged to them when *sole*." We think this is a very erroneous view of the act of the Legislature in

73

question. A careful consideration of it has satisfied us, that the principal object which the Legislature had in view, was to prevent the property of the wife from being liable for the debts of the husband, and from being sold and controlled by him.

But it does not appear to have been the intention, that she should have unlimited power to engage in trade, and to contract debts irrespective of the property which belonged to her. She may convey and devise her property in the same manner and with the like effect as though she were *sole*; and she may acquire a title to property in any of the ways pointed out in the statute.

It was urged by the counsel for the plaintiff in error, that because the statute provided that she may receive property by grant, she must be liable to an action for the price of the property, thus acquired, as the term "grant" as used in the act, implies a contract. We do not think this consequence follows, even admitting the Legislature used the term it uses in its strict technical sense. We have seen she has the unlimited power to convey her property. This implies the power to receive the price for which the property is sold, and to receive it in money or other property. It implies also, the power to purchase property because when the property is sold, and the price is received in money, it may be necessary to re-invest in other property. She has also the power to bring suits either in her own name or jointly with her husband, when the subject matter of the suit is her separate property. *Norval* v. *Rice et ux.*, 2 Wis. Rep. 22. All these powers she has, because they are all necessary to the full enjoyment of the right which the Legislature has conferred upon her. But it is not necessary to the full enjoyment of this right, that she should have the power to contract debts in such a manner as to become liable to a formal action.

The Legislature does not appear to have intended, that she should have the power to engage in trade, except so far as may be necessary to manage the property she may own. An unlimited power to sue and to be sued, and to engage in trade and business, on her own account possessed by the wife, would if exercised, be destructive of domestic ties and entirely inconsistent with conjugal obligation. We must therefore

hold, that a personal action cannot be maintained under our statute against a married woman. *Howe* v. *Wildes*, 34 Maine Rep. 566."

With this conclusion we entirely concur, but if we are to understand from what it said, that a court of equity would not recognize the power of a married woman to engage in trade, then it seems inconsistent with what was decided by this Court in *Radford* v. *Carwile*, 13 W. Va. p. 572. For it is obvious from this decision, if she were to engage in trade and thereby contract a debt a court of equity would enforce the payment of such debt out of her separate estate, either legal or equitable, but she could not be sued for such debt in a court of law. What was probably meant by the Wisconsin court was, that as it was in general undesirable, that married women should engage in trade, their Legislature did not intend to encourage it by giving to parties a right to sue at law a married woman, who had incurred a debt by engaging in trade. If this be the true meaning of the court, I entirely concur with it in this respect. That, however, a court of equity would subject the separate estate of a married woman to the payment of a debt incurred by her engaging in trade, I do not doubt. See *Penn* v. *Whitehead*, 12 Gratt 74; same case 17 Gratt 503.

But a portion of these views of the Wisconsin court, were subsequently overruled in *Conway* v. *Smith and wife*, when it was held that the Wisconsin statute gives a married woman, as necessarily incidental to the power of holding property for their own use, the power of making all contracts necessary or convenient to its beneficial enjoyment; and such contracts are to be regarded as valid in *law* and may be enforced by legal remedies. Judge Cole, however, dissented from this decision, and adhered to the decision rendered in 5 Wis. Rep.

In many of the States in comparatively recent times, acts have been passed, which either expressly or by necessary implication, removed from married women their common law legal incapacity to make contracts; and of couse, in such States, they may now be sued on their contracts in courts of law. In other States their legal incapacity to make contracts is only partially removed. They being authorized to make

contracts cognizable by the courts of law in certain cases only. Thus in Maine, on February 23, 1866, see chapter 52 of Acts, it was enacted, that "the contracts of married women, made for any lawful purpose, shall be valid and binding, and may be enforced in the same manner as if she were *sole.*" Of course now in that State, a common law suit would lie on any contract of a married woman. See *Mayo* v. *Hutchinson,* 57 Maine R. 546. And such too is the effect of the statutes of New York, passed in 1860 and 1863. See 10 W. Va. 176 and 177. So too in Mississippi, it is now provided. See Code of 1880 ch. 42 § 1167: "The common law as to the disability of married women is totally abrogated."

So many and frequent have been the charges of the statute law of the different States on this subject, that a careful examination of this statute law is necessary before we can tell what weight these decisions of their courts should have with us.

Our married women's law remains unchanged from what it was originally. It went into effect on April 1, 1869, and is to be found in the 66th chapter of our Code p. 447. No portion of this act, either expressly or by implication, can be construed in any manner to remove the legal incapacity of a married woman to make any contract, while she is living with her husband, except we so construe the first three sections. These are substantially the same as the New York statutes of 1848 and 1849; and indeed two of these sections are copied from these New York laws, excepting only a proviso, which we have added to the third section, which has no bearing on the question before us. Now the New York cases we have cited above, have construed these sections and have decided, that they in no manner removed or affected the *legal* incapacity of a married woman to make any contract. And if our views as expressed above are correct, they could reach no other conclusion, for these sections could have no possible influence on the capacity of a married woman to make any contract, which would be recognized by a law court, unless this effect were to be deduced from their converting as they do, the equitable separate estate of a married woman, into a legal estate. And we have seen, that

both on reason, and on the weight of the authorities, this conversion of a married woman's separate estate from an equitable, to a legal estate, has no effect upon her capacity at *law* to make a contract.

This subject was considered by this Court in *Stockton* v. *Farley*, 10 W. Va. 171; and we reached the conclusion, that our statutory law in no manner removed or affected the common law incapacity of a married woman, living with her husband, to make a contract of any sort binding on her in a court of law; and therefore, "in this State a common law suit cannot be brought against a married woman on any contract made by her, while married and living with her husband." In this case we reviewed the Illinois case above referred to, and disapproved of it and approved of the New York cases, to which we have referred.

Upon a careful reconsideration of the subject, I am satisfied, that we reached a correct conclusion in that case. Indeed cases have been since decided by this Court, which necessitate our adhering to this decision.      Thus *Radford* v. *Carwile*, 13 W. Va. R. p. 572, we decided, that the separate estate of a married woman which in a court of equity would be charged with a debt originating from a contract made by her while married, was her separate personal property, and the rents and profits during coverture of her real estate, but that the corpus of her real estate or the rents and profits of it after the coverture ceased, could now be subjected to the payment of such a debt. If in any case, a suit at common law was permitted to be instituted against her in a common law court, and a judgment was obtained against her, then the 5th section of ch. 139 of our Code, p. 666, would apply. In this section it is provided that, "every judgment for money against any person, shall be a lien on all the real estate to which such person shall be entitled at or *after* the date of the judgment." If then a judgment upon a contract could be rendered against a married woman, the corpus of her real estate could not only be sold, but any real estate she might acquire after the termination of the marriage, could also be sold. Thus a large amount of her property would be subjected to the payment of a debt contracted by her during marriage, which we have declared is not liable to such a debt.

So, that it is not a mere matter of form in what court she is sued for a debt, or on a contract. And it is essential to the maintenance of her substantial rights, that she should be sued only in a court of equity on her contracts. To permit her to be sued in a court of law in any case on her contract, would be to deny to her the protection which our law affords her; and would be really to put her in a far worse condition than she was put by the common law. And this statute law intended especially for her protection, would be so construed as to be destructive of the rights conferred on her by the common law.

As was said in the case of *Farley* v *Stockton*, 10 West Va. 171, our remarks above are confined to the case of a contract made by a married woman while living with her husband, and we declined in this case to decide, whether a common law suit could be brought against a married woman in this State, or a contract made by her while living separate and apart from her husband. The determination of this question must depend on the construction which may be given to the 13th section of chapter 66 of our Code, pages 449–450, which is altogether with reference to married women living separate and apart from their husbands.

As every contract of a married woman made while living with her husband, is absolutely null and void in a court of law, it must follow, that while living with her husband she can not form a valid partnership with a third person, which a court of law would recognize. And though she went through the form of entering into such a partnership, while living with her husband, she could not be sued for a debt of the partnership in a court of law, for in the view of a court of law she would not be a member of the partnership, and never was such member. It follows of course, that if the person with whom she formed this so-called partnership, was sued for such debt and he pleaded in abatement, that she was a partner and should have been sued with him, the plaintiff might reply, that she was a married woman which would be a good replication to such pleas, or if he chose, he might travers the pleas, and if on the trial of the issue on this plea in abatement be proved, that she was, when the partnership was formed, a married woman living with her

husband, the jury ought to find their verdict for the plaintiff. For this would establish, that she was not in the contemplation of the court at law, a partner and never had been.

Applying this law to this case as it was proven, that when the partnership of Burruss & Pitzer, was formed Mrs. Kate McK. Burruss was a married woman living with her husband, as well as when the debts of the plaintiff were contracted, and when the suit was brought the jury ought to have found, that Kate McK. Burruss, was not a partner of the firm of Burruss & Pitzer, instead of the reverse, and on the motion of the plaintiff, the verdict ought to have been set aside by the court and a new trial awarded. And the court by its judgment of May 19, 1879, having refused to do so and having entered up a judgment, that the plaintiff's writ be quashed and that the defendant J. B. Pitzer, recover against the plaintiff, his costs by him expended, and said judgment must be set aside, reversed and annulled, and a new trial awarded. The costs of the trial to abide the event of the suit and the plaintiff in error must recover his costs in this Court expended. In this case the plea in abatement was not filed, till the term of the court, instead of being filed at rules as the law requires. The English practice requires such a plea to be filed, within four days after the declaration is filed. See *Ryland* v. *Wormald*, 2 Meeson & Welsby page 393. The court therefore ought, when this case is remanded to the circuit court for further proceedings if asked by the plaintiff, to do so, permit his replication to this plea in abatement to be withdrawn, and if asked to do so by the plaintiff, after his withdrawal of this replication, it should strike the plea in abatement from the record as filed too late, and proceed with the cause as if it had not been filed.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.